ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
HARRISBURG

NOV 1 2000

MARY E. D'ANDREA, CLERK
Per _____
DEPUTY CL.

MAUREEN L. KRAUSE,                    :
                                      :
                    Petitioner :
                                      :
                                      :      CIVIL ACTION NO.
        v.                            :
                                      :
GERALD K. KRAUSE, SR., dec'd,         : 1 : CV - 00 - 1922
et al,                                :
                                      :
                    Respondents :   *J. Kane*

## NOTICE OF REMOVAL BY BARBARA KRAUSE,
## WIDOW OF GERALD K. KRAUSE, SR. and
## EXECUTRIX OF HIS ESTATE

Barbara Krause, widow of Gerald K. Krause, Sr., and executrix of his estate,

through her attorneys, IRA H. WEINSTOCK, P.C., respectfully requests that the

above-entitled action be removed from the Court of Common Pleas of Lebanon County,

Pennsylvania, pursuant to 28 U.S.C. §1441(a), (b) and (c), and 28 U.S.C. §1446

(a),(b), and (d).

# I.  PROCEDURAL PREREQUISITES

1.  Gerald K. Krause, Sr., deceased,  is named as a Respondent in an action recently filed in the Court of Common Pleas of Lebanon County, Pennsylvania, captioned there as *Maureen K. Krause v. Gerald K. Krause, Sr., dec'd, et al*, Civil Action in Divorce No. 1994-20522.

2.  A copy of the Petition, Order, and Rule to Show Cause, filed on October 25, and signed by the Court on October 26, is attached hereto as Exhibit A.

3.  The action is now pending before the Lebanon County Court of Common Pleas.

4.  The Petition was served upon Mr. Krause's attorney on October 26, 2000.

5.  On October 27, 2000 Maureen Krause's attorney also filed a Motion to Freeze Assets, specifically including any pension benefits Barbara Krause might be entitled to receive as a beneficiary of Gerald Krause, and an order signed by the court on October 30, 2000, freezing such pension benefits.  A copy is attached hereto as Exhibit B

6.  The Motion was served upon Attorney Bowie on October 28, 2000.

7.  This Notice of Removal is being filed within thirty (30) days of service of the petitions.

## II.    THE PARTIES

8.    Maureen Krause is Gerald Krause's ex-wife.

9.    Gerald Krause is deceased, and his wife, Barbara is the executrix/administrator of his estate.

## III.  BACKGROUND

10.    Gerald K. Krause, Sr. and Maureen L. Krause had been divorced in March, 1999.

11.    The Property Settlement Agreement signed by the parties specified that a Qualified Domestic Relations Order would be prepared by the parties and submitted to the Court for approval.

12.    Maureen Krause's attorney never prepared a Qualified Domestic Relations Order, nor submitted any Order to the Court for approval.

13.    Mr. Krause became ill in early 2000, and Attorney Hill was notified of Mr. Krause's illness when Attorney Bowie filed an Emergency Petition, in May, 2000, in Lebanon County Court of Common Pleas, to suspend Mr. Krause's alimony payments during his illness.

14.    Attorney Hill did not, after being notified of Mr. Krause's illness, seek to obtain a Qualified Domestic Relations Order on behalf of his client, Maureen Krause.

15. On May 3, 2000, Mr. Krause married Barbara Krause.

16. On August 6, 2000, Mr. Krause died.

17. On or about August 16, 2000, Maureen L. Krause, former wife of Gerald K. Krause apparently filed a Motion to Freeze Pension/Retirement Benefits, through her attorney, Joseph M. Hill, Jr., in the Lebanon County Court of Common Pleas. A copy of that motion was never served upon Mr. Krause's attorney, estate, or widow, and Barbara Krause was not aware of any action against her deceased husband.

18. Barbara Krause's attorney learned of the action when Teamsters Pension Fund contacted her attorney, Wendy D. Bowie, Esquire, and informed Ms. Bowie that they had received the Order. A copy of the Order received by Central Pennsylvania Teamsters Pension Fund is attached hereto as Exhibit C.

19. Central Pennsylvania Teamsters Pension Fund subsequently notified Attorney Hill and Attorney Bowie that they could not honor the Order, because, pursuant to the Employee Retirement Income Security Act of 1974, as amended (ERISA), the benefits could only be assigned or alienated through a Qualified Domestic Relations Order. A copy of the letter is attached hereto as Exhibit D.

20. Attorney Bowie notified Attorney Hill that she continued to represent Barbara

of action is unquestionably preempted by ERISA. To the extent that Plaintiff is alleging a federal claim under §502 of ERISA, 29 U.S.C. §1132, federal courts have "original jurisdiction" over such action. Therefore, this case is removable because of either:

    a.    the "complete preemption doctrine," which "converts an ordinary state common law complaint into a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life Insurance Company v. Taylor* 481 U.S. 58, 65 (1987); or

    b.    this is an ERISA action for benefits in which the federal courts have original jurisdiction. 29 U.S.C. §§1132(e)(1) and 1132(f); or

    c.    the action is cognizable under the common law of ERISA or is a federal question.

24.    ERISA preempts state laws (including "all laws, decisions, rules, regulations, or other State Action having the effect of law") that "relate to" an employee benefit plan. 29 U.S.C. §§1114(a) and (c)(1). *Shiffler, et. al. v. Equitable Life Assurance Society, et. al.* 838 F.2d 78 (3d Cir. 1987). The broad scope of ERISA preemption reflects the intent of Congress that litigation concerning plans be governed by a single federal standard. *Pilot Life Ins. Co. v. Dedeaux,* 481

U.S. 41, 45-6 (1987).

25.   Plaintiff seeks an Order requiring either the Pension Fund, or the recipient of a

Qualified Joint and Survivor Annuity to make payment to Maureen Krause.

26.   She, therefore, seeks a to claim a benefit from the Central Pennsylvania

Teamsters Pension Fund, or the recipient of a Qualified Joint and Survivor

Annuity which is currently being paid to another beneficiary, and is, therefore

a claim for benefits within the meaning of §502(a)(1)(B) of ERISA, which states,

in relevant part:  "A civil action may be brought – (1) by a participant or

beneficiary – (B) to recover benefits due him under the terms of his plan, to

enforce his rights under the terms of the plan, or to clarify his rights to future

benefits under the terms of the plan  . . ." 29 U.S.C. §1132(a)(1)(B).

27.   Petitioner, moreover, seeks an Order to obtain benefits from the either the

Teamsters Pension Fund, or the surviving spouse of a participant, when there are

no longer any benefits payable with respect to the Participant.

28.   Petitioner, therefore, states a cause of action under §502(a)(3) of ERISA which

is a civil action brought "by a participant or beneficiary, or fiduciary (A) to

enjoin any act or practice which violates any provision of this title or the terms

of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such

violations or (ii) to enforce any of the provisions of this title or the terms of the plan." 29 U.S.C. §1132(a)(3).

29.   Petitioner, therefore, states a cause of action under §502(a)(3)(B) of ERISA which seeks "to obtain other appropriate equitable relief."   29 U.S.C. §1132(a)(3)(B).

30.   Under ERISA, "except for actions under subsection (a)(1)(B) of this section [§502], **the district courts of the United States shall have exclusive jurisdiction of civil actions** under this title brought by the Secretary or by a participant, beneficiary, fiduciary . . ." 29 U.S.C. §1132(e)(1).  Section 501(f) provides that the "district courts of the United States **shall have jurisdiction**, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action.  29 U.S.C. §1132(f).

31.   On this date, the Prothonotary of the Court of Common Pleas of Lebanon County, and all parties, have been notified of the filing of this Notice to Remove. A copy of that notification is attached hereto as Exhibit "F."

Respectfully Submitted,

**IRA H. WEINSTOCK, P.C.**
800 North Second Street
Harrisburg, PA  17102
Phone:  (717) 238-1657


By: _Wendy Dullea Bowie_
     WENDY DULLEA BOWIE

|  |  |
|---|---|
| MAUREEN L. KRAUSE, | : IN THE COURT OF COMMON PLEAS |
| PETITIONER | : LEBANON COUNTY, PENNSYLVANIA |
| | : CIVIL ACTION – FAMILY DIVISION |
| VS. | : |
| | : NO. 1994-20522 |
| GERALD K. KRAUSE, SR., dec'd., : | |
| et al, | : |
| RESPONDENTS | : IN DIVORCE |

**ORDER AND RULE**

AND NOW, to wit, this 26th day of October, 2000, upon consideration of the

within Petition, a Rule is hereby issued upon Respondents to show cause, if any they

have, why the relief prayed for in the Petition should not be granted.

Rule Returnable   *14 days after Service*

BY THE COURT:

**/s/ ROBERT J. EBY, P.J.**

_____ J.

PURSUANT TO RULE 236
You are hereby notified
that this order has been
entered in this case.

EXHIBIT
"A"

MAUREEN L. KRAUSE,    : IN THE COURT OF COMMON PLEAS
          PETITIONER    : LEBANON COUNTY, PENNSYLVANIA
                        : CIVIL ACTION – FAMILY DIVISION
    VS.               :
                        : NO.  1994-20522
GERALD K. KRAUSE, SR., dec'd., :
et al,                  :
          RESPONDENTS    : IN DIVORCE

## PETITION TO ENFORCE DECREE IN DIVORCE

AND NOW, comes the Petitioner, Maureen L. Krause, by her attorney, Joseph M.

Hill, Jr., Esquire, and files the within Petition and in support thereof, states as follows:

1.  Petitioner is Maureen L. Krause, a sui juris individual residing at 109 Palm

City Park, Annville, Pennsylvania  17003.

2.  Respondent is the Estate of Gerald K. Krause, Sr. (hereinafter "Decedent"), c/o

Ira H. Weinstock, P.C., Suite 100, 800 North Second Street, Harrisburg, Pennsylvania

17102.

3.  Respondent is Barbara Krause (hereinafter "Respondent"), a sui juris

individual who allegedly married decedent in May 2000 and who is believed to be the

beneficiary of Decedent's pension/retirement benefits, c/o Wendy Dullea Bowie, Esquire,

Ira H. Weinstock, P.C., Suite 100, 800 North Second Street, Harrisburg, Pennsylvania

17102.

4.  The Decedent died on August 6, 2000.

5.  Petitioner and Decedent were formerly husband and wife, having been divorced by Decree in Divorce dated March 16, 1999 by The Honorable Robert J. Eby, President Judge, Court of Common Pleas of Lebanon County.

6.  The aforementioned Decree in Divorce incorporated a Property Settlement Agreement between the parties dated March 6, 1999, a copy of which Decree in Divorce and Property Settlement Agreement are attached hereto, marked Exhibit "A" and incorporated herein.

## COUNT I – ENFORCEMENT OF EQUITABLE DISTRIBUTION

7.  Paragraphs 1 through 6 are incorporated herein as if set forth at length.

8.  Paragraph 11 of said Property Settlement Agreement awarded Petitioner the following sums:

(a)  two-thirds of the marital portion of Decedent's defined benefit plan, valued at separation @ $16,571.00, to wit, $11,047.89;

(b)  two-thirds of the marital portion of Decedent's defined contribution plan, valued at separation @ $55,142.77, to wit, $36,763.68; and

(c)  two-thirds of any increase in value accrued on each of Decedent's pension plans from the date of separation to the date of distribution.

9.  In addition, paragraph 17 of said Property Settlement Agreement awarded Petitioner an extra $15,000.00 from Decedent's defined contribution plan, in lieu of additional alimony.

10. Accordingly, pursuant to said Property Settlement Agreement and Decree in Divorce, Petitioner is entitled to the total sum of $62,811.57, plus two-thirds of any increase in value of each of Decedent's pension plans from the date of separation to the date of distribution.

11. Early in 2000, Decedent became seriously ill and was transferred to a hospital in Columbus, Ohio where he awaited a double lung transplant.

12. During that time period, believed to be in May 2000, Decedent allegedly married Barbara Krause.

13. On August 16, 2000, upon Motion of Petitioner, this Honorable Court issued an Order freezing pension/retirement benefits in the name of Decedent, a copy of which Order and Motion are attached hereto, marked Exhibit "B".

14. Thereafter, on or about September 12, 2000, the Central Pennsylvania Teamsters Fund (hereinafter "Teamsters"), by its attorneys, Cleary & Josem LLP, notified Petitioner's counsel that the August 16, 2000 Order would not be complied with by Teamsters, a copy of which correspondence is attached hereto, marked Exhibit "C".

15. Thereafter, on September 18, 2000 Petitioner forwarded a proposed QDRO to the Teamsters, a copy of which proposed QDRO is attached hereto, marked Exhibit "D".

16. Thereafter, in a letter dated September 29, 2000, Teamsters indicated that Exhibit "D" could not be deemed a QDRO and that decedent's pension interest passed to his beneficiaries, a copy of which correspondence is attached hereto, marked Exhibit "E".

17. That paragraph 24 of said Property Settlement Agreement provides that "this Agreement shall be binding and shall inure to the benefits of the parties hereto and their respective heirs, executors, administrators, succesors and assigns."

18. That paragraph 26 of said Property Settlement Agreement provides that the parties "will forthwith execute any and all written instruments, assignments, releases, satisfactions, deeds, notes, or such other writings as may be necessary or desirable for the proper effectuation of this Agreement."

WHEREFORE, Petitioner respectfully requests that the Decree in Divorce be enforced and that Your Honorable Court issue an Order directing the following:

(a) Payment of $62,811.57 from Decedent's retirement benefits/pension plus two-thirds of any increase in value in said retirement benefits/pension from May 5, 1995 to the present.

## COUNT II – ENFORCEMENT OF ALIMONY

19. Paragraphs 1 through 18 are incorporated herein as if set forth at length.

20. Paragraph 17 of said Agreement required Decedent to pay to Petitioner the sum of $500.00 per month alimony commencing upon the date of the Agreement, to wit, March 4, 1999, and continuing for eighty-four consecutive months.

21. That Decedent paid said alimony payments to Petitioner through the month of January 2000.

22.  That Decedent failed to make said alimony payments for the months of February, March, April, May, June, July and August 2000.

23.  That there is due and owing from Decedent's estate to Petitioner the sum of 3,500.00  ($500.00 x 7 months).

WHEREFORE, Petitioner respectfully requests that the Decree in Divorce be enforced and that Your Honorable Court enter an Order directing the following:

(a)  Payment of  $3,500.00 from Decedent's estate to Petitioner.

Dated:  October 24, 2000

_____
Joseph M. Hill, Jr., Esquire
Attorney for Petitioner
124 South 8th Street
Lebanon, PA  17042
(717) 272-7171
I.D. #24984

## **VERIFICATION**

I verify that the statements made in the foregoing Petition To Enforce Decree In Divorce are true and correct. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S.A. section 4904 relating to unsworn falsification to authorities.

Dated: 10|24|00

Maureen L. Krause
Maureen L. Krause

MAUREEN L. KRAUSE,       : IN THE COURT OF COMMON PLEAS
       PETITIONER       : LEBANON COUNTY, PENNSYLVANIA
                      : CIVIL ACTION – FAMILY DIVISION
    VS.                 :
                      : NO.  1994-20522
GERALD K. KRAUSE, SR., dec'd., :
et al,                 :
        RESPONDENT    : IN DIVORCE

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have, this day, provided the Prothonotary's Office

with envelopes, having affixed proper postage thereto, for service by first class mail,

addressed as follows:

> Ira H. Weinstock, P.C.
> Suite 100
> 800 North Second Street
> Harrisburg, PA  17102
>
> Attorney for the Estate of Gerald K. Krause, Sr.
>
>
> Wendy Dullea Bowie, Esquire
> Ira H. Weinstock, P.C
> Suite 100
> 800 North Second Street
> Harrisburg, PA  17102
>
> Attorney for Barbara Krause

Dated:  October 25, 2000

                                  Joseph M. Hill, Jr., Esquire
                                  Attorney for Petitioner
                                  124 South 8th Street
                                  Lebanon, PA  17042
                                  (717) 272-7171
                                  ID #24984

| | |
|---|---|
| MAUREEN L. KRAUSE, | : IN THE COURT OF COMMON PLEAS |
| PLAINTIFF | : LEBANON COUNTY, PENNSYLVANIA |
| | : CIVIL ACTION - FAMILY DIVISION |
| VS. | : |
| | : NO. 94-20522 |
| GERALD K. KRAUSE, SR., | : |
| DEFENDANT | : IN DIVORCE |

## DECREE IN DIVORCE

AND NOW, to wit, this _16th_ day of _march_ , 1999, it is ORDERED AND DECREED that Maureen L. Krause, Plaintiff, and Gerald K. Krause, Sr., Defendant, are divorced from the bonds of matrimony.

It is further ORDERED that the Property Settlement Agreement, attached hereto and marked Exhibit "A", shall be incorporated, but not merged in this Decree.

The court retains jurisdiction of any claims raised by the parties to this action for which a final order has not yet been entered.

Any existing spousal support order shall hereafter be deemed an order for alimony pendente lite if any economic claims remain pending.

BY THE COURT:

/s/ ROBERT J. EBY, P.J.

_____J.

PURSUANT TO RULE 236
You are hereby notified
that this order has been
entered in this case.

Exhibit "A"

## PROPERTY SETTLEMENT AGREEMENT

THIS **AGREEMENT**, made this 4th day of March 1999, by and between

Maureen L. Krause of Lebanon County, Pennsylvania, hereinafter called "WIFE," and Gerald K.

Krause, Sr. of Lebanon County Pennsylvania, hereinafter called "HUSBAND."

**WHEREAS**, HUSBAND and WIFE were lawfully married on February 25, 1984 in Elkton,

Maryland; and

**WHEREAS**, there were no children born of this marriage; and

**WHEREAS**, diverse, unhappy differences, disputes, and difficulties have arisen between

HUSBAND and WIFE and it is the intention of HUSBAND and WIFE to live separate and apart

from each other for the rest of their natural lives, and HUSBAND and WIFE desire to settle and

determine fully and finally their respective financial and property rights and obligations as between

each other, including without limitation by specification: the settling of all matters between them

relating to the ownership and equitable distribution of real and personal property; the settling of all

matters between them relating to the past, present and future support and alimony; and in general,

the settling of any and all claims by one against the other or against their respective estates.

**NOW THEREFORE**, in consideration of the premises and of the mutual promises covenants

and undertakings contained herein, and for other good and valuable consideration, receipt of which

is hereby acknowledged by each of the parties hereto, HUSBAND and WIFE, each intending to be

legally bound, hereby covenant and agree as follows:

*1.*     *Separation:*  It shall be lawful for each party at all times hereafter to live separate and

apart from each other at such place as he or she from time to time shall choose or deem fit.  The

foregoing provision shall not be taken as an admission on the part of either party of the lawfulness

or unlawfulness of the causes leading to their living apart.

2.   **Interference:**   Each party shall be free from interference, authority and control by the other, as fully as if he or she were single and unmarried, except as may be necessary to carry out the provisions of this Agreement.   Neither party shall molest or attempt to endeavor to molest the other, nor compel the other to cohabit with the other, nor in any way harass or malign the other, nor in any other way interfere with the peaceful existence of the other, while living separate and apart.

3.   **Subsequent Divorce:**   The parties acknowledge that WIFE has filed a Complaint in Divorce under the Pennsylvania Divorce Code alleging that the marriage is irretrievably broken, HUSBAND hereby expresses his agreement that the marriage is irretrievably broken and expresses his intent to execute any and all affidavits necessary for the parties to obtain an absolute divorce pursuant to §3301(c) of the Divorce Code.   The parties hereby waive all rights to request Court-ordered counseling under the Divorce Code.   It is specifically understood and agreed by the parties that the provisions of this Agreement as to equitable distribution of property of the parties are accepted by each party as a final settlement for all purposes, whatsoever, as contemplated by the Pennsylvania Divorce Code.

Should a decree, judgment or order of separation or divorce be obtained by either of the parties in this or any other state, country or jurisdiction, each of the parties hereby consents and agrees that this Agreement and all of its covenants shall not be affected in any way by any such separation or divorce; and that nothing in any such decree, judgment, order or further modification or revisions thereof shall alter, amend or vary any term of this Agreement, whether or not either or both of the parties shall remarry.   It is specifically agreed that a copy of this Agreement or the substance of the provisions thereof, may be incorporated by reference into any divorce, judgment or

decree. it is the specific intent of the parties to permit this Agreement to survive any judgment and to be forever binding and conclusive upon the parties.

**4.    *Date of Execution:*** The "date of execution" or "execution date" of this Agreement shall be defined as the day upon which it is executed by the parties if they have each executed the agreement on the same date. Otherwise, the "date of execution" or "execution date" of this Agreement shall be defined as the date of execution by the party last executing this Agreement.

**5.    *Mutual Release:*** HUSBAND and WIFE each do hereby mutually remise, release, quitclaim and forever discharge the other and the estate of such other, for all time to come, and for all purposes whatsoever, of and from any and all rights, title and interests, or claims in or against the property (including income and again from property hereafter accruing) of the other or against the estate of such other, of whatever nature and wheresoever situate, which he or she now has or at any time hereafter may have against the other, the estate of such other or any part thereof, whether arising out of any former acts, contracts, engagements or liabilities of such other or by way of dower or curtesy or widow's or widower's rights, family exemption or similar allowance, or under the intestate laws, or the right to take against the spouse's will' or the right to treat a lifetime conveyance by the other as testamentary, or all other rights of a surviving spouse to participate in a deceased spouse's estate whether arising under the laws of Pennsylvania; any State, Commonwealth or territory of the United States; or any country; ro any rights which either party may have or at anytime hereafter shall have for past, present or future support or maintenance, alimony, alimony pendente lite, counsel fees, property division, costs or expenses, whether arising as a result of the marital relations or otherwise, except, all rights and obligations of whatsoever nature arising or which may arise under this Agreement or for the breach of any provision thereof.

It is the intention of HUSBAND and WIFE to give to each other by the execution of this Agreement a full, complete and general release with respect to any and all property of any kind or nature, real, personal or mixed, which the other now owns or may hereafter acquire, except and only except all rights and agreements and obligations of whatsoever nature arising or which may arise under this Agreement or for the breach of any provision thereof.

It is further agreed that this Agreement shall be and constitute a full and final resolution of any and all claims which each of the parties may have against the other for equitable division of property, alimony, counsel fees and expenses, alimony pendente lite or any other claims pursuant to the Pennsylvania Divorce Code or the divorce laws of any other jurisdiction.

6. *Representation By Legal Counsel:* HUSBAND and WIFE are each represented by legal counsel and HUSBAND and WIFE hereby acknowledge that they have had the opportunity to review the terms of this Agreement with their respective counsel and have entered into this Agreement willingly, knowingly, freely, and voluntarily and have done so after having had the opportunity to review and discuss this Agreement with their respective attorneys and to discuss any and all questions they may have regarding this agreement including its legal effect and its consequences with their respective attorneys. HUSBAND and WIFE acknowledge and accept that this Agreement is, in the circumstances, fair and equitable and that it is being entered into freely and voluntarily and that the execution of this Agreement is not the result of any duress or undue influence and that it is not the result of any collusion or improper or illegal agreement or agreements.

7. *Warranty as to Existing Obligations:* Each party represents that he or she has not heretofore incurred or contracted for any debt or liability or obligation for which the estate of the other party may be responsible or liable except as may be provided for in this Agreement. Each party

agrees to indemnify and hold the other party harmless for and against any and all such debts, liabilities or obligation of every kind which may have heretofore been incurred by them, including those for necessities, except for the obligation arising out of this Agreement.

8. **_Existing Debts:_** HUSBAND and WIFE agree that the existing marital debts are those debts identified on Page 35 of the Special Master's Report filed in the Lebanon County Court of Common Pleas on December 30, 1997. A copy of Page 35 is attached hereto as Exhibit A, and is incorporated herein by reference.

HUSBAND agrees to be solely responsible for paying the balances on the marital debts and agrees to indemnify, and hold WIFE harmless from any and all liability for the marital debts.

HUSBAND agrees to be solely responsible for all post-separation debts which he incurred and agrees to indemnify, and hold WIFE harmless from any and all liability for said debts.

WIFE agrees to be solely responsible for all post-separation debts which she incurred and agrees to indemnify, and hold HUSBAND harmless from any and all liability for said debts:

9. **_Warranty as to Future Obligations:_** HUSBAND and WIFE each covenant, warrant, represent and agree that, with the exception of the obligations set forth in this Agreement, neither of them shall hereafter incur any liability whatsoever for which the estate of the other may be liable. Each party shall indemnify and hold harmless the other party for and against any and all debts, charges and liabilities incurred by the other after the execution date of this Agreement, except as may be otherwise specifically provided for by the terms of this Agreement.

10. **_Personal Property:_** The parties acknowledge that they have divided all of their personal property between themselves to their mutual satisfaction. Neither party shall make any claim to any such item of marital property, or of the separate personal property of either party, except as

provided for in this Agreement, which will be in the possession and/or under the control of the other. Should it become necessary, the parties each agree to sign, upon request, any titles or documents necessary to give effect to this paragraph. Property shall be deemed to be in the possession or control of either party if, in the case of tangible personal property, the item is physically in the possession or control of the party at the later of the time of the execution of this Agreement or the date of separation; and in the case of intangible personal property, if any physical or written evidence of ownership, such as passbook, checkbook, policy or certificate of insurance or other similar writing is in the possession or control of the party at the later of the time of the execution of this Agreement or the date of separation.

**11.    *Pension/Retirement Benefits:*** HUSBAND and WIFE acknowledge that HUSBAND is a participant in two pension plans, a defined benefit plan and a defined contribution plan. HUSBAND and WIFE agree that the value of the marital portion of HUSBAND'S defined benefit plan, at the date of separation, is $16,571.00, and the value of the marital portion of HUSBAND'S defined contribution plan, at the date of separation, is $55,142.77.

HUSBAND and WIFE agree that WIFE shall receive two-thirds (⅔) of the marital portion of each of HUSBAND'S pension plans, plus two-thirds (⅔) of any increase in value accrued thereon from the date of separation to the date of distribution. HUSBAND and WIFE agree to the entry of one or more QUALIFIED DOMESTIC RELATIONS ORDERS to effectuate the terms of this Agreement, and further agree that the Court may retain jurisdiction of this matter to effectuate the terms of this Agreement. The parties agree to execute any and all documents necessary to effectuate the entry of and approval of any Qualified Domestic Relations Orders. The parties further agree that upon the entry of a Decree of divorce, the necessary Qualified Domestic Relations Orders shall be

prepared and shall be submitted to the Court for signature by a Judge.

12.    **Motor Vehicles:**  The parties agree that WIFE shall become the sole and exclusive owner of the 1989 Pontiac Grand Am.  WIFE shall be solely responsible for all costs associated with the car including, but not limited to registration and insurance costs, maintenance costs, and all expenses related to the ownership and operation of the car and further agrees to indemnify and hold HUSBAND harmless for payment of such obligations.

The parties agree that HUSBAND shall become the sole and exclusive owner of the 1982 pick-up truck.  HUSBAND shall be solely responsible for all costs associated with the car including, but not limited to registration and insurance costs, maintenance costs, and all expenses related to the ownership and operation of the car and further agrees to indemnify and hold WIFE harmless for payment of such obligations

The parties agree to execute any and all documents necessary to transfer title to either car exclusively to the party designated under this section to retain possession and sole ownership of such car.

13.    **After Acquired Personal Property:**   Each of the parties shall hereafter own and enjoy, independently of any claims or right of the other, all items of personal property, tangible or intangible, hereafter acquired by him or her, with full power in him or her to dispose of the same as fully and effectively, in all respects and for all purposes, as though he or she were unmarried.

14.    **Applicability of Tax Law to Property Transfers:**   The parties hereby agree and express their intent that any transfers of property pursuant to this Agreement shall be within the scope and applicability of the Deficit Reduction Act of 1984 (herein the "Act"), specifically, the provisions of said Act pertaining to transfers of property between spouses or former spouses.  The parties agree

to sign and cause to be filed any elections or other documents required by the Internal Revenue Service to render the Act applicable to the transfers set forth in this Agreement, without recognition of gain on such transfer and subject to the carry-over basis provisions of said Act.

**15.    *Division of Real Property:*** HUSBAND shall retain possession and ownership of the marital residence, located at 845 Russell Drive, Annville, Pennsylvania, and shall HUSBAND shall, within ninety (90) days of execution of this Agreement, pay to WIFE the sum of $31,000.00, which represents WIFE'S equity interest in the marital residence.

**17.    *Alimony:*** HUSBAND agrees to pay to WIFE the sum of $500.00 per month in alimony for a period of time which commences upon execution of this Agreement and which ends on the earlier of WIFE'S death or the date upon which HUSBAND has paid eighty-four (84) monthly payments to WIFE, provided, however, that if WIFE abandons custody of Steven Kenneth Krause, or voluntarily relinquishes custody of Steven, other than to Steven's natural parents, WIFE'S alimony shall be reduced to the sum of $400.00 per month.  HUSBAND agrees that in lieu of additional alimony, the sum of $15,000.00 shall be added to the portion of HUSBAND'S defined contribution plan (Retirement Income Plan) allocated to WIFE in Paragraph 11 of this Agreement, and shall be included in the Qualified Domestic Relations Order referenced in Paragraph 11.

**18.    *Income Tax Deduction:*** HUSBAND and WIFE agree that HUSBAND shall be entitled to claim his grandson, STEVEN KENNETH KRAUSE as a deduction for the purposes of state and federal income taxes until such time as STEVEN is no longer eligible for dependent status under state or federal income tax laws.

**19.    *Waiver of Legal Fees:*** Each party hereby waives and agrees not to claim or demand any form of counsel fees or expenses from the other party.

20. ***Disclosure and Waiver of Procedural Rights:*** Each party understands that he or she has the right to obtain from the other party a complete inventory or list of all of the property that either or both parties own at this time or owns as of the date of separation, and that each party has the right to have all such property valued by means of appraisals or otherwise. Both parties understand that they have the right to have Court hold hearings and make decisions on the matters covered by this Agreement. Both parties understand that a Court decision concerning the parties' respective rights and obligations might be different from the provisions of this Agreement.

Both parties waive the following procedural rights:

a. The right to obtain an Inventory and Appraisement of all marital and separate property as defined by the Pennsylvania Divorce Code;

b. The right to obtain an Income and Expense Statement of the other party as provided by the Pennsylvania Divorce Code;

c. The right to have the Court determine which property is marital and which is non-marital and equitably distribute between the parties that property which the Court determines to be marital;

d. The right to have the Court decide any other rights, remedies, privileges, or obligations covered by this Agreement, including, but not limited to possible claims for divorce, spousal support, alimony, alimony pendente lite, counsel fees, costs and expenses.

21. ***Waiver or Modification to be in Writing:*** No modification or waiver of any of the terms hereof shall be valid unless in writing and signed by both parties and no waiver of any breach hereof or default hereunder shall be deemed a waiver of any subsequent default whether of the same or similar nature.

22.    *Mutual Cooperation:*   Each party shall, at any time and from time to time hereafter, take any and all steps and execute, acknowledge and deliver to the other party any and all further instruments and/or documents that the other party may reasonably require for the purpose of giving full force and effect to the provisions of this Agreement.

23.    *Applicable Law:*   This Agreement shall be construed in accordance with the laws of the Commonwealth of Pennsylvania which are in effect as of the date of execution of this Agreement.

24.    *Agreement Binding on Heirs:*   This Agreement shall be binding and shall inure to the benefits of the parties hereto and their respective heirs, executors, administrators, successors and assigns.

25.    *Integration:*   This Agreement constitutes the entire understanding of the parties and supersedes any and all prior agreements and negotiations between them.  There are no representations or warranties other than those expressly set forth herein.

26.    *Other Documentation:*   HUSBAND and WIFE covenant and agree that they will forthwith execute any and all written instruments, assignments, releases, satisfactions, deeds, notes, or such other writings as may be necessary or desirable for the proper effectuation of this Agreement.

27.    *No Waiver on Default:*   This Agreement shall remain in full force and effect unless and until terminated under and pursuant to the terms of this Agreement.  The failure of either party to insist upon strict performance of any of the provisions of this Agreement shall in no way affect the right of such party hereafter to enforce the same, nor shall the waiver of any default or breach of any provisions hereof be construed as a waiver of any subsequent default or breach of the same or similar nature, nor shall it be construed as a waiver of strict performance of any other obligations herein.

28.    *Severability:*   If any term, condition, clause or provision of this Agreement shall be

determined or declared to be void or invalid in law or otherwise, then only that term, condition, clause or provisions shall be stricken from this Agreement and in all other respects this Agreement shall be valid and continue in full force, effect and operation.  Likewise, the failure of any party to meet his or her obligation under any one or more of the paragraphs herein, with the exception of the satisfaction of the conditions precedent, shall in no way avoid or alter the remaining obligations of the parties.

29.   **Breach:**   If either party breaches any provision of this Agreement, the other party shall have the right, at his or her election, to sue for damages for breach.  The party breaching this Agreement shall be responsible for the payment of legal fees and costs incurred by the other in enforcing his or her rights under this Agreement, or seeking such other remedy or relief as may be available to him or her.  The parties agree that they may enforce this Agreement in accordance with the provisions as set forth in the Divorce Code of 1980, as amended.

30.   **Full Disclosure:**   HUSBAND and WIFE each represent and warrant to the other that he or she has made a full and complete disclosure to the other of all of their assets and income to the other.  Although values for assets fluctuate and appraisals of the value of real estate and other assets are subject to differences of opinion, each acknowledges that they have clearly and completely disclosed to each other their assets and their liabilities.

31.   **Waiver of Claims Against Estates:**   Except as otherwise provided herein, each party may dispose of his or her property in any way, and each party hereby waives and relinquishes any and all rights he or she may now have or hereafter acquire, under the present or future laws of any jurisdiction, to share in the property or the estate of the other as a result of the marital relationship, including, without limitation, dower, curtesy, statutory allowance, widow's allowance, right to take

in intestacy, right to take against the Will of the other, and right to act as administrator or executor

of the other's estate, and each will, to the request of the other, execute, acknowledge and deliver any

and all instruments which may be necessary or advisable to carry into effect this mutual waiver and

relinquishment of all such interests, rights and claims.

33. *Death During Period of Separation:* In the event the parties are residing separate

and apart at the time of either party's death, it shall be deemed that the parties are divorced. In this

event, the surviving party shall receive only that property described in this Agreement which he or

she would have received under this divorce/separation provisions.

34. *Voluntary Execution:* The provisions of this Agreement are fully understood by both

parties and each party acknowledges that this Agreement is fair and equitable, that it is being entered

into voluntarily and that it is not the result of any duress or undue influence.

35. *Entire Agreement:* This Agreement contains the entire understanding of the parties

and there are no representations, warranties, covenants or undertakings other than those expressly

set forth herein.

36. *Prior Agreement:* It is understood and agreed that any and all property settlement

agreements which may or have been executed prior to the date and time of this Agreement are null

and void and of no effect.

37. *Independent Separate Covenants:* It is specifically understood and agreed by and

between the parties hereto that each paragraph hereof shall be deemed to be a separate and

independent covenant and Agreement.

38. *Void Clauses:* If any term, condition, clause or provision of this Agreement shall be

determined or declared to be void or invalid in law or otherwise, then only that term, condition, clause

or provision shall be stricken from this Agreement and in all other respects this Agreement shall be valid and continue in full force, effect and operation.

39.  *Entry as Part of Decree:*   It is the intention of the parties that this Agreement shall survive any action for divorce which may be instituted or prosecuted by either party and no order, judgment or decree of divorce, temporary, final or permanent, shall affect or modify the financial terms of this Agreement.  This Agreement shall be incorporated, but not merged, into any final Decree in Divorce.

40.  *Waiver of Rights Under Divorce Code of Other Jurisdictions:*   In the event that any action for annulment, divorce, dissolution of marriage, separate maintenance, support or similar actions shall be instituted by either of the parties in a jurisdiction other than Pennsylvania, the parties further agree that each of them does hereby waive any and all rights that the laws of that jurisdiction shall grant to them, whether such jurisdiction is a state which permits equitable distribution of marital property or not, whether such state recognizes the concept of community property, or whether or not the laws of any such state are similar or dissimilar to the laws of the Commonwealth of Pennsylvania. In the event that the law of such other jurisdiction holds invalid any waiver of spousal support, then that party obtaining spousal support agrees to indemnify and hold harmless the other party dollar for dollar for any amount that must be paid as spousal support, alimony pendente lite, permanent alimony or the like.

41.  *Headings Not Part of Agreement:*   Any heading preceding the text of the several paragraphs and subparagraphs hereof are inserted solely for convenience of reference and shall not constitute a part of this Agreement nor shall they affect its meaning, construction, or effect.

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound hereby, have

hereunto set their hands and seals the day and year first written above.

WITNESS:

_____          _____
                                          MAUREEN KRAUSE


_____          _____
                                          GERALD K. KRAUSE, SR.

COMMONWEALTH OF PENNSYLVANIA          )
                                      )          ss:
COUNTY OF  hEDANON                    )

On this, the 2ND day of March _____, 1999, before me, a Notary

Public, personally appeared Maureen L. Krause known to me to be the person whose name is

subscribed to the within Property Settlement Agreement and acknowledged that she executed the

same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

NOTARIAL SEAL
LISA M. HYLTON, NOTARY PUBLIC
Lebanon, Lebanon County
My Commission Expires July 8, 1999

COMMONWEALTH OF PENNSYLVANIA          )
                                      )          ss:
COUNTY OF  Dauphin                    )

On this, the 4th day of March _____, 1999, before me, a Notary

Public, personally appeared Gerald K. Krause, Sr.., known to me to be the person whose name is

subscribed to the within Property Settlement Agreement and acknowledged that he executed the same

for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

NOTARIAL SEAL
LINDA WITMER, Notary Public
Harrisburg, Dauphin County, PA
My Commission Expires: 03-20-2000

Page 15 of 15

|     |                                                                                  |            |
| --- | -------------------------------------------------------------------------------- | ---------- |
| 5.  | Life insurance                                                                   | 4,827.85   |
| 6.  | Yellow Freight Central Pennsylvania Teamsters Defined Benefit Plan               | 16,571.00  |
| 7.  | Central Pennsylvania Teamster's Retirement Income Plan (marital portion only)    | 55,142.77  |
| 8.  | Teamster's Credit Union Savings                                                  | 608.00     |
| 9.  | Lebanon Valley National Bank - checking account                                  | 1,037.00   |
| 10. | Lebanon Valley National Bank - savings account                                   | 1,500.00   |
| 11. | Personal property                                                                | 1,210.00   |

TOTAL: $  151,662.52

### C.  NON-MARITAL ASSETS IN PLAINTIFF'S POSSESSION  VALUE

1.  1990 Chevy Cavalier                    0.00
                                      non-marital

### D.  NON-MARITAL ASSETS IN DEFENDANT'S POSSESSION  VALUE

1.  1992 Oldsmobile                       0.00
    previously accounted for by trade-in of other vehicle

### E.  MARITAL LIABILITIES                   VALUE

|     |                      |          |
| --- | -------------------- | -------- |
| 1.  | Choice Visa          | 960.70   |
| 2.  | Ford Citibank Visa   | 1,193.76 |
| 3.  | Sears (wife)         | 2,666.84 |
| 4.  | Sears (husband)      | 3,512.85 |
| 5.  | Norwest              | 2,945.63 |
| 6.  | Hechingers           | 793.56   |
| 7.  | Silo                 | 704.42   |
| 8.  | Household Bank Visa   | 2,255.32 |
| 9.  | Meridian Mastercard  | 2,511.68 |
| 10. | LVNB Visa            | 2,004.18 |
| 11. | QVC                  | 176.48   |
| 12. | Mellon Mastercard    | 5,600.50 |

TOTAL: $  25,325.92

- 35 -

# EXHIBIT A

MAUREEN L. KRAUSE,         : IN THE COURT OF COMMON PLEAS
       MOVANT/PLAINTIFF     : LEBANON COUNTY, PENNSYLVANIA
                                  : CIVIL ACTION - FAMILY DIVISION

VS.                                    :
                                    : NO. 1994-20522

GERALD K. KRAUSE, SR., deceased   :
       RESPONDENT/DEFENDANT  : IN DIVORCE

## ORDER OF COURT

AND NOW, to wit, this 16⁴ᵗʰ day of August _____, 2000, upon consideration of the within Motion To Freeze Pension/Retirement Benefits, it is hereby ORDERED AND DECREED as follows:

(1)  TO:  Central Pennsylvania Teamsters Pension Fund:  You are immediately ordered to freeze pension/retirement plans, accounts, funds, or similar assets in the amount of $62,811.57 in the name of Gerald K. Krause, Sr., or in which Gerald K. Krause, Sr. has an interest, and you are also prohibited from cashing in, conveying, transferring or otherwise distributing to anyone any funds, including but not limited to the following:

(a)  Central Pennsylvania Teamsters Retirement Income Plan;

(b)  Yellow Freight Central Pennsylvania Teamsters Defined Benefit Plan.

This Order shall take effect immediately and shall continue until further Order of Court.

Exhibit "B"

(a)  two-thirds of the marital portion of Husband's defined benefit plan, valued at separation @ $16,571.00, to wit, $11,047.89;

(b)  two-thirds of the marital portion of Husband's defined contribution plan, valued at separation @ $55,142.77, to wit, $36,763.68; and

(c)  two-thirds of any increase in value accrued on each of Husband's pension plans from the date of separation to the date of distribution.

7.  In addition, paragraph 17 of said Property Settlement Agreeement awarded Movant an extra $15,000.00 from Husband's defined contribution plan, in lieu of additional alimony.

8.  Accordingly, pursuant to said Property Settlement Agreement, Movant is entitled to the total sum of $62,811.57, plus two-thirds of any increase in value of each of Husband's pension plans from the date of separation to the date of distribution.

9.  Movant is unsure of the existence of a QDRO.

10.  That shortly prior to his death, the deceased remarried.

11.  That Movant files this Motion in order to protect her economic rights in the Decree in Divorce.


WHEREFORE, Movant respectfully requests Your Honorable Court to grant the following relief:

(a)  issue an Order freezing the sum of $62,811.57 from Husband's pension/retirement plans as described in paragraph 6 above;

(b)  such other relief as Your Honorable Court deems appropriate.

## PROPERTY SETTLEMENT AGREEMENT

THIS AGREEMENT, made this 4th day of March 1999, by and between

Maureen L. Krause of Lebanon County, Pennsylvania, hereinafter called "WIFE," and Gerald K.

Krause, Sr. of Lebanon County Pennsylvania, hereinafter called "HUSBAND."

WHEREAS, HUSBAND and WIFE were lawfully married on February 25, 1984 in Elkton,

Maryland; and

WHEREAS, there were no children born of this marriage; and

WHEREAS, diverse, unhappy differences, disputes, and difficulties have arisen between

HUSBAND and WIFE and it is the intention of HUSBAND and WIFE to live separate and apart

from each other for the rest of their natural lives, and HUSBAND and WIFE desire to settle and

determine fully and finally their respective financial and property rights and obligations as between

each other, including without limitation by specification: the settling of all matters between them

relating to the ownership and equitable distribution of real and personal property; the settling of all

matters between them relating to the past, present and future support and alimony; and in general,

the settling of any and all claims by one against the other or against their respective estates.

NOW THEREFORE, in consideration of the premises and of the mutual promises covenants

and undertakings contained herein, and for other good and valuable consideration, receipt of which

is hereby acknowledged by each of the parties hereto, HUSBAND and WIFE, each intending to be

legally bound, hereby covenant and agree as follows:

1.    *Separation:*  It shall be lawful for each party at all times hereafter to live separate and

apart from each other at such place as he or she from time to time shall choose or deem fit.  The

foregoing provision shall not be taken as an admission on the part of either party of the lawfulness

or unlawfulness of the causes leading to their living apart.

2. **Interference:** Each party shall be free from interference, authority and control by the other, as fully as if he or she were single and unmarried, except as may be necessary to carry out the provisions of this Agreement. Neither party shall molest or attempt to endeavor to molest the other, nor compel the other to cohabit with the other, nor in any way harass or malign the other, nor in any other way interfere with the peaceful existence of the other, while living separate and apart.

3. **Subsequent Divorce:** The parties acknowledge that WIFE has filed a Complaint in Divorce under the Pennsylvania Divorce Code alleging that the marriage is irretrievably broken. HUSBAND hereby expresses his agreement that the marriage is irretrievably broken and expresses his intent to execute any and all affidavits necessary for the parties to obtain an absolute divorce pursuant to §3301(c) of the Divorce Code. The parties hereby waive all rights to request Court-ordered counseling under the Divorce Code. It is specifically understood and agreed by the parties that the provisions of this Agreement as to equitable distribution of property of the parties are accepted by each party as a final settlement for all purposes, whatsoever, as contemplated by the Pennsylvania Divorce Code.

Should a decree, judgment or order of separation or divorce be obtained by either of the parties in this or any other state, country or jurisdiction, each of the parties hereby consents and agrees that this Agreement and all of its covenants shall not be affected in any way by any such separation or divorce; and that nothing in any such decree, judgment, order or further modification or revisions thereof shall alter, amend or vary any term of this Agreement, whether or not either or both of the parties shall remarry. It is specifically agreed that a copy of this Agreement or the substance of the provisions thereof, may be incorporated by reference into any divorce, judgment or

It is the intention of HUSBAND and WIFE to give to each other by the execution of this Agreement a full, complete and general release with respect to any and all property of any kind or nature, real, personal or mixed, which the other now owns or may hereafter acquire, except and only except all rights and agreements and obligations of whatsoever nature arising or which may arise under this Agreement or for the breach of any provision thereof.

It is further agreed that this Agreement shall be and constitute a full and final resolution of any and all claims which each of the parties may have against the other for equitable division of property, alimony, counsel fees and expenses, alimony pendente lite or any other claims pursuant to the Pennsylvania Divorce Code or the divorce laws of any other jurisdiction.

6.    *Representation By Legal Counsel:*  HUSBAND and WIFE are each represented by legal counsel and HUSBAND and WIFE hereby acknowledge that they have had the opportunity to review the terms of this Agreement with their respective counsel and have entered into this Agreement willingly, knowingly, freely, and voluntarily and have done so after having had the opportunity to review and discuss this Agreement with their respective attorneys and to discuss any and all questions they may have regarding this agreement including its legal effect and its consequences with their respective attorneys.  HUSBAND and WIFE acknowledge and accept that this Agreement is, in the circumstances, fair and equitable and that it is being entered into freely and voluntarily and that the execution of this Agreement is not the result of any duress or undue influence and that it is not the result of any collusion or improper or illegal agreement or agreements.

7.    *Warranty as to Existing Obligations:*  Each party represents that he or she has not heretofore incurred or contracted for any debt or liability or obligation for which the estate of the other party may be responsible or liable except as may be provided for in this Agreement.  Each party

agrees to indemnify and hold the other party harmless for and against any and all such debts, liabilities

or obligation of every kind which may have heretofore been incurred by them, including those for

necessities, except for the obligation arising out of this Agreement.

8.    *Existing Debts:*  HUSBAND and WIFE agree that the existing marital debts are those

debts identified on Page 35 of the Special Master's Report filed in the Lebanon County Court of

Common Pleas on December 30, 1997.  A copy of Page 35 is attached hereto as Exhibit A, and is

incorporated herein by reference.

HUSBAND agrees to be solely responsible for paying the balances on the marital debts and

agrees to indemnify, and hold WIFE harmless from any and all liability for the marital debts.

HUSBAND agrees to be solely responsible for all post-separation debts which he incurred

and agrees to indemnify, and hold WIFE harmless from any and all liability for said debts.

WIFE agrees to be solely responsible for all post-separation debts which she incurred and

agrees to indemnify, and hold HUSBAND harmless from any and all liability for said debts:

9.    *Warranty as to Future Obligations:*  HUSBAND and WIFE each covenant, warrant,

represent and agree that, with the exception of the obligations set forth in this Agreement, neither of

them shall hereafter incur any liability whatsoever for which the estate of the other may be liable.

Each party shall indemnify and hold harmless the other party for and against any and all debts, charges

and liabilities incurred by the other after the execution date of this Agreement, except as may be

otherwise specifically provided for by the terms of this Agreement.

10.    *Personal Property:*   The parties acknowledge that they have divided all of their

personal property between themselves to their mutual satisfaction.  Neither party shall make any claim

to any such item of marital property, or of the separate personal property of either party, except as

provided for in this Agreement, which will be in the possession and/or under the control of the other. Should it become necessary, the parties each agree to sign, upon request, any titles or documents necessary to give effect to this paragraph. Property shall be deemed to be in the possession or control of either party if, in the case of tangible personal property, the item is physically in the possession or control of the party at the later of the time of the execution of this Agreement or the date of separation; and in the case of intangible personal property, if any physical or written evidence of ownership, such as passbook, checkbook, policy or certificate of insurance or other similar writing is in the possession or control of the party at the later of the time of the execution of this Agreement or the date of separation.

11.     *Pension/Retirement Benefits:*   HUSBAND and WIFE acknowledge that HUSBAND is a participant in two pension plans, a defined benefit plan and a defined contribution plan. HUSBAND and WIFE agree that the value of the marital portion of HUSBAND'S defined benefit plan, at the date of separation, is $16,571.00, and the value of the marital portion of HUSBAND'S defined contribution plan, at the date of separation, is $55,142.77.

HUSBAND and WIFE agree that WIFE shall receive two-thirds (⅔) of the marital portion of each of HUSBAND'S pension plans, plus two-thirds (⅔) of any increase in value accrued thereon from the date of separation to the date of distribution. HUSBAND and WIFE agree to the entry of one or more QUALIFIED DOMESTIC RELATIONS ORDERS to effectuate the terms of this Agreement, and further agree that the Court may retain jurisdiction of this matter to effectuate the terms of this Agreement. The parties agree to execute any and all documents necessary to effectuate the entry of and approval of any Qualified Domestic Relations Orders. The parties further agree that upon the entry of a Decree of divorce, the necessary Qualified Domestic Relations Orders shall be

prepared and shall be submitted to the Court for signature by a Judge.

12.    *Motor Vehicles:*   The parties agree that WIFE shall become the sole and exclusive owner of the 1989 Pontiac Grand Am.  WIFE shall be solely responsible for all costs associated with the car including, but not limited to registration and insurance costs, maintenance costs, and all expenses related to the ownership and operation of the car and further agrees to indemnify and hold HUSBAND harmless for payment of such obligations.

The parties agree that HUSBAND shall become the sole and exclusive owner of the 1982 pick-up truck.  HUSBAND shall be solely responsible for all costs associated with the car including, but not limited to registration and insurance costs, maintenance costs, and all expenses related to the ownership and operation of the car and further agrees to indemnify and hold WIFE harmless for payment of such obligations

The parties agree to execute any and all documents necessary to transfer title to either car exclusively to the party designated under this section to retain possession and sole ownership of such car.

13.    *After Acquired Personal Property:*   Each of the parties shall hereafter own and enjoy, independently of any claims or right of the other, all items of personal property, tangible or intangible, hereafter acquired by him or her, with full power in him or her to dispose of the same as fully and effectively, in all respects and for all purposes, as though he or she were unmarried.

14.    *Applicability of Tax Law to Property Transfers:*   The parties hereby agree and express their intent that any transfers of property pursuant to this Agreement shall be within the scope and applicability of the Deficit Reduction Act of 1984 (herein the "Act"), specifically, the provisions of said Act pertaining to transfers of property between spouses or former spouses.  The parties agree

to sign and cause to be filed any elections or other documents required by the Internal Revenue

Service to render the Act applicable to the transfers set forth in this Agreement, without recognition

of gain on such transfer and subject to the carry-over basis provisions of said Act.

   15.    *Division of Real Property:*    HUSBAND shall retain possession and ownership of

the marital residence, located at 845 Russell Drive, Annville, Pennsylvania, and shall HUSBAND

shall, within ninety (90) days of execution of this Agreement, pay to WIFE the sum of $31,000.00,

which represents WIFE'S equity interest in the marital residence.

   17.    *Alimony:*    HUSBAND agrees to pay to WIFE the sum of $500.00 per month in

alimony for a period of time which commences upon execution of this Agreement and which ends on

the earlier of WIFE'S death or the date upon which HUSBAND has paid eighty-four (84) monthly

payments to WIFE, provided, however, that if WIFE abandons custody of Steven Kenneth Krause,

or voluntarily relinquishes custody of Steven, other than to Steven's natural parents, WIFE'S alimony

shall be reduced to the sum of $400.00 per month.  HUSBAND agrees that in lieu of additional

alimony, the sum of $15,000.00 shall be added to the portion of HUSBAND'S defined contribution

plan (Retirement Income Plan) allocated to WIFE in Paragraph 11 of this Agreement, and shall be

included in the Qualified Domestic Relations Order referenced in Paragraph 11.

   18.    *Income Tax Deduction:*    HUSBAND and WIFE agree that HUSBAND shall be

entitled to claim his grandson, STEVEN KENNETH KRAUSE as a deduction for the purposes of

state and federal income taxes until such time as STEVEN is no longer eligible for dependent status

under state or federal income tax laws.

   19.    *Waiver of Legal Fees:*    Each party hereby waives and agrees not to claim or demand

any form of counsel fees or expenses from the other party.



20.    *Disclosure and Waiver of Procedural Rights:*  Each party understands that he or she has the right to obtain from the other party a complete inventory or list of all of the property that either or both parties own at this time or owns as of the date of separation, and that each party has the right to have all such property valued by means of appraisals or otherwise.  Both parties understand that they have the right to have Court hold hearings and make decisions on the matters covered by this Agreement.  Both parties understand that a Court decision concerning the parties' respective rights and obligations might be different from the provisions of this Agreement.

Both parties waive the following procedural rights:

a.    The right to obtain an Inventory and Appraisement of all marital and separate property as defined by the Pennsylvania Divorce Code;

b.    The right to obtain an Income and Expense Statement of the other party as provided by the Pennsylvania Divorce Code;

c.    The right to have the Court determine which property is marital and which is non-marital and equitably distribute between the parties that property which the Court determines to be marital;

d.    The right to have the Court decide any other rights, remedies, privileges, or obligations covered by this Agreement, including, but not limited to possible claims for divorce, spousal support, alimony, alimony pendente lite, counsel fees, costs and expenses.

21.    *Waiver or Modification to be in Writing:*  No modification or waiver of any of the terms hereof shall be valid unless in writing and signed by both parties and no waiver of any breach hereof or default hereunder shall be deemed a waiver of any subsequent default whether of the same or similar nature.

22.    *Mutual Cooperation:*    Each party shall, at any time and from time to time hereafter, take any and all steps and execute, acknowledge and deliver to the other party any and all further instruments and/or documents that the other party may reasonably require for the purpose of giving full force and effect to the provisions of this Agreement.

23.    *Applicable Law:*    This Agreement shall be construed in accordance with the laws of the Commonwealth of Pennsylvania which are in effect as of the date of execution of this Agreement.

24.    *Agreement Binding on Heirs:*    This Agreement shall be binding and shall inure to the benefits of the parties hereto and their respective heirs, executors, administrators, successors and assigns.

25.    *Integration:*    This Agreement constitutes the entire understanding of the parties and supersedes any and all prior agreements and negotiations between them. There are no representations or warranties other than those expressly set forth herein.

26.    *Other Documentation:*    HUSBAND and WIFE covenant and agree that they will forthwith execute any and all written instruments, assignments, releases, satisfactions, deeds, notes, or such other writings as may be necessary or desirable for the proper effectuation of this Agreement.

27.    *No Waiver on Default:*    This Agreement shall remain in full force and effect unless and until terminated under and pursuant to the terms of this Agreement. The failure of either party to insist upon strict performance of any of the provisions of this Agreement shall in no way affect the right of such party hereafter to enforce the same, nor shall the waiver of any default or breach of any provisions hereof be construed as a waiver of any subsequent default or breach of the same or similar nature, nor shall it be construed as a waiver of strict performance of any other obligations herein.

28.    *Severability:*    If any term, condition, clause or provision of this Agreement shall be

determined or declared to be void or invalid in law or otherwise, then only that term, condition, clause or provisions shall be stricken from this Agreement and in all other respects this Agreement shall be valid and continue in full force, effect and operation. Likewise, the failure of any party to meet his or her obligation under any one or more of the paragraphs herein, with the exception of the satisfaction of the conditions precedent, shall in no way avoid or alter the remaining obligations of the parties.

29.    *Breach:*    If either party breaches any provision of this Agreement, the other party shall have the right, at his or her election, to sue for damages for breach. The party breaching this Agreement shall be responsible for the payment of legal fees and costs incurred by the other in enforcing his or her rights under this Agreement, or seeking such other remedy or relief as may be available to him or her. The parties agree that they may enforce this Agreement in accordance with the provisions as set forth in the Divorce Code of 1980, as amended.

30.    *Full Disclosure:*    HUSBAND and WIFE each represent and warrant to the other that he or she has made a full and complete disclosure to the other of all of their assets and income to the other. Although values for assets fluctuate and appraisals of the value of real estate and other assets are subject to differences of opinion, each acknowledges that they have clearly and completely disclosed to each other their assets and their liabilities.

31.    *Waiver of Claims Against Estates:*    Except as otherwise provided herein, each party may dispose of his or her property in any way, and each party hereby waives and relinquishes any and all rights he or she may now have or hereafter acquire, under the present or future laws of any jurisdiction, to share in the property or the estate of the other as a result of the marital relationship, including, without limitation, dower, curtesy, statutory allowance, widow's allowance, right to take

in intestacy, right to take against the Will of the other, and right to act as administrator or executor of the other's estate, and each will, to the request of the other, execute, acknowledge and deliver any and all instruments which may be necessary or advisable to carry into effect this mutual waiver and relinquishment of all such interests, rights and claims.

33. *Death During Period of Separation:* In the event the parties are residing separate and apart at the time of either party's death, it shall be deemed that the parties are divorced. In this event, the surviving party shall receive only that property described in this Agreement which he or she would have received under this divorce/separation provisions.

34. *Voluntary Execution:* The provisions of this Agreement are fully understood by both parties and each party acknowledges that this Agreement is fair and equitable, that it is being entered into voluntarily and that it is not the result of any duress or undue influence.

35. *Entire Agreement:* This Agreement contains the entire understanding of the parties and there are no representations, warranties, covenants or undertakings other than those expressly set forth herein.

36. *Prior Agreement:* It is understood and agreed that any and all property settlement agreements which may or have been executed prior to the date and time of this Agreement are null and void and of no effect.

37. *Independent Separate Covenants:* It is specifically understood and agreed by and between the parties hereto that each paragraph hereof shall be deemed to be a separate and independent covenant and Agreement.

38. *Void Clauses:* If any term, condition, clause or provision of this Agreement shall be determined or declared to be void or invalid in law or otherwise, then only that term, condition, clause

or provision shall be stricken from this Agreement and in all other respects this Agreement shall be valid and continue in full force, effect and operation.

39. *Entry as Part of Decree:*  It is the intention of the parties that this Agreement shall survive any action for divorce which may be instituted or prosecuted by either party and no order, judgment or decree of divorce, temporary, final or permanent, shall affect or modify the financial terms of this Agreement.  This Agreement shall be incorporated, but not merged, into any final Decree in Divorce.

40. *Waiver of Rights Under Divorce Code of Other Jurisdictions:*  In the event that any action for annulment, divorce, dissolution of marriage, separate maintenance, support or similar actions shall be instituted by either of the parties in a jurisdiction other than Pennsylvania, the parties further agree that each of them does hereby waive any and all rights that the laws of that jurisdiction shall grant to them, whether such jurisdiction is a state which permits equitable distribution of marital property or not, whether such state recognizes the concept of community property, or whether or not the laws of any such state are similar or dissimilar to the laws of the Commonwealth of Pennsylvania. In the event that the law of such other jurisdiction holds invalid any waiver of spousal support, then that party obtaining spousal support agrees to indemnify and hold harmless the other party dollar for dollar for any amount that must be paid as spousal support, alimony pendente lite, permanent alimony or the like.

41. *Headings Not Part of Agreement:*  Any heading preceding the text of the several paragraphs and subparagraphs hereof are inserted solely for convenience of reference and shall not constitute a part of this Agreement nor shall they affect its meaning, construction, or effect.

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound hereby, have

hereunto set their hands and seals the day and year first written above.

WITNESS:

_____          _____
                                          MAUREEN KRAUSE

_____          _____
                                          GERALD K. KRAUSE, SR.

COMMONWEALTH OF PENNSYLVANIA    )
                                )    ss:
COUNTY OF  LEBANON               )

On this, the _2ND_ day of _March_, 1999, before me, a Notary

Public, personally appeared Maureen L. Krause known to me to be the person whose name is

subscribed to the within Property Settlement Agreement and acknowledged that she executed the

same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Lisa M. Hylton_
Notary Public

NOTARIAL SEAL
LISA M. HYLTON, NOTARY PUBLIC
Lebanon, Lebanon County
My Commission Expires July 8, 1999

COMMONWEALTH OF PENNSYLVANIA    )
                                )    ss:
COUNTY OF  Dauphin               )

On this, the _4th_ day of _March_, 1999, before me, a Notary

Public, personally appeared Gerald K. Krause, Sr.., known to me to be the person whose name is

subscribed to the within Property Settlement Agreement and acknowledged that he executed the same

for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Linda Witmer_
Notary Public

NOTARIAL SEAL
LINDA WITMER, Notary Public
Harrisburg, Dauphin County, PA
My Commission Expires: 03-20-2000

Page 15 of 15

| | | |
|---|---|---:|
| 5. | Life insurance | 4,827.85 |
| 6. | Yellow Freight Central Pennsylvania Teamsters Defined Benefit Plan | 16,571.00 |
| 7. | Central Pennsylvania Teamster's Retirement Income Plan (marital portion only) | 55,142.77 |
| 8. | Teamster's Credit Union Savings | 608.00 |
| 9. | Lebanon Valley National Bank - checking account | 1,037.00 |
| 10. | Lebanon Valley National Bank - savings account | 1,500.00 |
| 11. | Personal property | 1,210.00 |

TOTAL: $  151,662.52

## C.  NON-MARITAL ASSETS IN PLAINTIFF'S POSSESSION  VALUE

1.  1990 Chevy Cavalier                       0.00
                                          non-marital

## D.  NON-MARITAL ASSETS IN DEFENDANT'S POSSESSION  VALUE

1.  1992 Oldsmobile                           0.00
    previously accounted for by trade-in of other vehicle

## E.  MARITAL LIABILITIES                        VALUE

| | | |
|---|---|---:|
| 1. | Choice Visa | 960.70 |
| 2. | Ford Citibank Visa | 1,193.76 |
| 3. | Sears (wife) | 2,666.84 |
| 4. | Sears (husband) | 3,512.85 |
| 5. | Norwest | 2,945.63 |
| 6. | Hechingers | 793.56 |
| 7. | Silo | 704.42 |
| 8. | Household Bank Visa | 2,255.32 |
| 9. | Meridian Mastercard | 2,511.68 |
| 10. | LVNB Visa | 2,004.18 |
| 11. | QVC | 176.48 |
| 12. | Mellon Mastercard | 5,600.50 |

TOTAL: $  25,325.92

**EXHIBIT A**



# CLEARY & JOSEM LLP

JOSEPH T. CLEARY*
WILLIAM T. JOSEM*†
MARILYN T. JAMAIN
REGINA C. HERTZIG†
JEREMY E. MEYER†

* ALSO ADMITTED IN NEW YORK AND NEW JERSEY
† ALSO ADMITTED IN NEW JERSEY

ATTORNEYS AND COUNSELLORS AT LAW
SUITE 300
1420 WALNUT STREET
PHILADELPHIA, PENNSYLVANIA 19102-4097

(215) 735-9099
FAX (215) 985-1666

NEW JERSEY OFFICE
450 TILTON ROAD, SUITE 220
NORTHFIELD, NEW JERSEY 08225
(609) 407-0222
FAX (609) 484-0897

September 12, 2000

Joseph M. Hill, Jr.
124 South 8th Street
Lebanon, Pennsylvania 17042

Re:     Central Pennsylvania Teamsters Pension Fund
        Krause v. Krause, Order to Freeze Retirement Account

        Participant: Gerald K. Krause, Sr., SS# 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

Dear Mr. Hill:

This firm represents the Central Pennsylvania Teamsters Pension Fund (the "Fund"). The Fund recently received a Order directing the Fund to freeze assets equal to $62,811.57 from the pension account of Gerald K. Krause, Sr. This is to advise you that the Fund cannot comply with the order.

Under Section 414(p) of the Internal Revenue Code of 1986, as amended ("IRC"), 26 U.S.C. §414(p) and Section 206(d) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1056(d) the Fund is generally required to provide the benefits required under the Plan documents and is prohibited from assigning or alienating the participants benefits, except, among other limited circumstances, pursuant to a Qualified Domestic Relations Order ("QDRO"). A domestic relations order is "qualified" only if it satisfies certain legal requirements as set forth in the above sections of IRC and ERISA. These requirements are set forth in the Central Pennsylvania Teamsters Pension Fund Domestic Relations Order Procedure, a copy of which is enclosed for your review.

The order submitted does not qualify as a QDRO because:

(1) it does not assign a right of payment of Plan benefits to the "alternate payee". An "alternate payee" is the spouse, former spouse, child, or other dependant of a participant.

(2) it does not include the address of the Participant (Gerald K. Krause, Sr.),

(3) it does not name and provide the mailing address of the alternate payee(s),

Exhibit "C"

Joseph M. Hill, Jr.
September 12, 2000
Page 2

If you would like to submit a domestic relations order (either proposed or executed) that complies with the above requirements, please send it to: Richard R. Weiler, Pension Benefits Manager, Central Pennsylvania Teamsters Pension Fund, P.O. Box 15223, Reading, PA 19612-5223.  For your convenience, we have enclosed copies of the fund's Model Domestic Relations Orders.  If you have any questions, please call.

Very truly yours,

Jeremy E. Meyer

Enclosures

cc:    Wendy D. Bowie, Esquire
       Joseph J. Samolewicz, Administrator
       Richard Weiler, Pension Benefits Manager

IN THE COURT OF COMMON PLEAS

OF LEBANON COUNTY, PENNSYLVANIA

FAMILY DIVISION

MAUREEN L. KRAUSE                                    No. 94-20522

     v.                                                    In Divorce

GERALD K. KRAUSE, SR.

### QUALIFIED DOMESTIC RELATIONS ORDER

AND NOW, this      day of          , 2000 , based on the
findings set forth below in items one through five, IT IS ORDERED,
ADJUDGED AND DECREED as set forth below:


1.  PARTIES - The parties hereto were husband and wife, and a
divorce action is in this Court at the above number, and this
Court has personal jurisdiction over the parties, the subject of
this Order and this dissolution of marriage action pursuant to the
domestic relations laws of this State.  The parties were married
on February 25, 1984.


2.  PARTICIPANT - Gerald K. Krause, Sr.
Date of birth October 9, 1954
Social Security Number 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
hereinafter referred to as "Participant", is a member of the
Central Pennsylvania Teamsters Retirement Income Plan (Hereafter
referred to as the "Plan")

1

Exhibit "D"

3.   PARTICIPANT ADDRESS - The current and last known mailing address of Participant is 845 Russell Drive, Annville, Pennsylvania 17003.

4.   ALTERNATE PAYEE - Maureen L. Krause
Date of birth July 14, 1943
Social Security Number 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
hereinafter referred to as "Alternate Payee" is the spouse or former spouse of the Participant. The Alternate Payee has not at any time been a participant in the Plan but has an interest in the Participant's benefits under the domestic relations laws of this State.

5.   ALTERNATE PAYEE ADDRESS - The current and last known mailing address of Alternate Payee is 109 Palm City Park, Annville, Pennsylvania 17003.

6.   PLAN - The Plan to which this Order applies is the plan named in item 2 hereof or any amended or successor plan thereto.

7.   LAW - A portion of the Participant's account in the Plan is marital property subject to distribution by this Court under State domestic relations law for the jurisdiction in which this Order is issued and under which the above-named Participant and Alternate Payee are covered.  This Order creates and recognizes as

2

to the Plan the existence of the Alternate Payee's right, subject to the provisions of this Order, to a share of benefits otherwise payable to the Participant under the Plan, in the amount and form as set forth herein.

8. VALUATION - On a date (hereinafter referred to as the "account assignment date") that falls an soon as practicable following timely approval of this Order by the Plan as a qualified domestic relations order under Section 414(p) of the Code and that is selected by the Plan as a feasible date on which to effect the assignment, the following portion of Participant's account balance in the Plan shall be assigned and transferred to the exclusive benefit of Alternate Payee: an amount equal to the sum of (i) 66.67% of the Participant's account balance as of May 7, 1995 minus 66.67% of the Participant's account balance as of February 25, 1984, plus (or minus) (ii) the investment earnings credited (or investment losses debited) to item (i) from the first regular valuation date under the Plan that falls on or after May 7, 1995, (hereinafter referred to as the "earnings crediting date") until the account assignment date, plus (iii) $15,000.00 (the total assigned amount hereinafter referred to as the "assigned account balance"). In order to effect this assignment to Alternate Payee, that part of the Participant's account balance as of the account assignment date that is invested in each investment fund (other than the participant loan fund) made

available under the Plan and selected by Participant as one of the Participant's investment options shall be assigned and transferred to Alternate Payee in an amount determined by applying to that part the percentage that is equal to a fraction, the numerator of which is the assigned account balance and the denominator of which is the Participant's entire account balance (calculated without regard to the participant loan fund) as of the account assignment date. For plan accounting and federal, state, and local income tax purposes, a portion of the pre-tax salary reduction employee contributions, post-tax payroll deduction employee contributions and employer contributions that are credited to Participant shall be assigned and transfered to Alternate Payee as part of the assigned account balance, the assigned portion of each type of such contributions to be the amount of each type of contribution determined as of the earnings crediting date and multiplied by a fraction, the numerator of which is item (i) and the denominator of which is the Participant's entire account balance as of the earnings crediting date. At all times on and after the account assignment date, Alternate Payee shall have no interest whatsoever in the portion of the Participant's account balance that is not assigned and transferred to Alternate Payee pursuant to this Order, and Participant shall have no interest whatsoever in the assigned account balance.

4

9. INVESTMENT - In the event that the payment of all or any portion of the Alternate Payee's benefits under the Plan is to be 1delayed, the Alternate Payee shall be permitted to direct the investment of Alternate Payee's interest in the Plan. To the extent that the Alternate Payee directs investment of interest in the Plan under this item, the income or loss on such interest shall be determined on a segregated basis in the account of the Alternate Payee.  Until the appropriate forms are executed by the Alternate Payee designating investment instructions, the Alternate Payee's account shall be invested in proportion to the investments in the Participant's total account at the time of segregation.

10. DEATH OF ALTERNATE PAYEE - In the event that the Alternate Payee dies before the entire interest of the Alternate Payee in the Plan has been paid, the Trustee shall distribute the remaining interest in the Plan, determined as set forth in this Order, as soon as practicable to the Alternate Payee's named beneficiary or estate, or heirs and assigns.


11.  DISTRIBUTION - The benefits shall be payable as a distribution to the Alternate Payee upon request (or, if not then living, to the heirs or assigns) on the earliest practicable date, not in contradiction of the Plan or law or regulations, of the following, but not before this Order has been found to be a Qualified Domestic Relations Order by the Plan and written request has been made as may be required by the Plan  on  forms,  if any,

5

prescribed by the Plan:

(a) as soon as administratively practical after receipt and approval of this Order by the Plan Administrator; (b) the approval of this Order as a Qualified Domestic Relations Order by the Plan Administrator as if the Participant had retired on such date even if the Participant has not actually retired or separated from service;

(c) the date on which the Participant attains Normal Retirement Age, as if the Participant had retired on that date even if the Participant has not actually retired or separated from service;

(d) the date the Participant actually retires or otherwise separates from service for whatever reason;

(e) the date of death of the Participant;

(f) the date the Participant reaches age 50;

(g) the date the Participant reaches earliest retirement age under the Plan;

(h) the date the Participant enters pay status for whatever reason. If Participant has already reached the earliest retirement age under the Plan then payment shall be made to the Alternate Payee as soon as administratively available following the determination that this Order is qualified and the receipt of a request for payment by the Alternate Payee. Payout may be made before the Participant terminates employment if not in contradiction of the Plan or law or regulations, but not before

this Order is found to be qualified.

12.  FORM - The form of said payment is a lump sum distribution.  In accord with the Plan's normal administrative procedures the Alternate Payee may request that the distribution be in the form of a full or partial transfer to the administrator, trustee or custodian of the Alternate Payee's Individual Retirement Account (IRA).  Upon notification from the Plan to the Alternate Payee of the approval of this Order, the Alternate Payee shall inform the Plan of the IRA transfer details if that is to be done.  In the event of the death of the Alternate Payee, any death benefit available under the Plan based on the award in this Order shall be payable to the named beneficiary, estate, or heirs and assigns.

13.  RIGHTS - The Alternate Payee shall have the same account investment direction rights with regard to Alternate Payee's portion of the Plan as are available to the Participant with regard to the remaining account portion of the Plan.  In no event shall the Alternate Payee have greater rights than those which are available to the Participant.  The Alternate Payee is not entitled to any benefit not otherwise provided under the Plan or by this Order. The Plan shall issue individual tax forms to each such recipient for amounts paid to each such person. The Alternate Payee is only entitled to the specific benefits under the Plan as

7

provided for in this Order.  All other rights, privileges and options under the Plan not granted to Alternate Payee are preserved for the Participant.  Each is responsible for individual tax reporting.

14.  ADDRESSES - The parties agree to promptly notify the Plan Administrator of any change in their addresses from those set forth in this Order.

15.  STATUS - The parties agree to promptly submit this Order to the Plan Administrator for determination of its status as a Qualified Domestic Relations Order.

16.  ORDER - It is the knowledge and information of the Court that neither it nor the Participant and Alternate Payee are aware of any other orders which purport to dispose of the benefits described herein.  No provision in this Order shall be construed to require the Plan to

(a) make any payment or take any action which is inconsistent with any federal or state law, rule, regulation or applicable judicial decision;

(b) provide any type or form of benefit, or any option, which is not otherwise provided under the Plan and specifically authorized by this Order;

(c) provide increased benefits, determined on the basis of

8

actuarial value; or

(d) pay benefits to any Alternate Payee which are required to be paid to another Alternate Payee under another order previously determined to be a qualified domestic relations order. Notwithstanding any other provision of this Order, in the event that the Participant, Alternate Payee or any other party claiming rights under this Order shall make any claim which the Plan shall determine to be inconsistent with the provisions of this Order or with any provision of law, rule or applicable judicial decision, the Plan may cease making any further payments to any person whose rights under the Plan, in the sole judgment of the Plan, may be affected by such claim pending resolution of such claim or further order of the Court, and the Plan may also take such further action or actions as may be permitted by law with respect to such claim and/or this Order. No provision in this Order shall be construed to require the Plan, the Plan Administrator, or any trustee or other fiduciary with respect to the Plan to take any action which is inconsistent with any provision of the Plan as now in effect or hereafter amended.

17. NOTIFICATION - The Plan shall notify each of the parties hereto and their legal representatives when either party makes application for any benefit payments or withdrawals from the Plan, but such notice requirement shall lapse after the Alternate Payee's account is established.

9

18.  DESIGNATION - The parties designate the following attorneys as representatives for receipt of copies of notices pertaining to this Order:

-  for Participant - Wendy Dullea Bowie, Esq.,

   Ira H. Weinstock, P.C., 800 North Second Street, Suite 100, Harrisburg, Pennsylvania 19401

-  for Alternate Payee - Joseph M. Hill, Jr.

   124 South Street, Lebanon, Pennsylvania 17042.

19.  JURISDICTION - It is intended that this Order shall qualify as a Qualified Domestic Relations Order under the Retirement Equity Act of 1984, P.L. 98-397 in accordance with Section 414(p) of the Internal Revenue Code of 1986 as amended and the appropriately applicable provisions of the Employee Retirement Income Security Act of 1974 as amended and the Pennsylvania Divorce Code of 1980, and its provisions shall be administered and interpreted in conformity with such provisions.  If any provision of this Order is inapplicable it shall be ignored and it shall not affect the validity of other provisions or of the Order itself. The Court retains jurisdiction to amend this Order as might be necessary to establish or maintain its status.

10

I hereby acknowledge that I have received the terms and provisions of the within Order, that I assent to the terms and provisions thereof, and agree that the terms and provisions herein shall be entered as an Order of Court

APPROVED

_____

Alternate Payee

_____

Participant

_____

Date

_____

Date

BY THE COURT:

_____

11

CLEARY & JOSEM LLP

ATTORNEYS AND COUNSELLORS AT LAW

JOSEPH T. CLEARY*
WILLIAM IT. JOSEM*
MARILYN T. JAMAIN
REGINA C. HERTZIG*
JEREMY E. MEYER*

* ALSO ADMITTED IN NEW YORK AND NEW JERSEY
* ALSO ADMITTED IN NEW JERSEY

SUITE 300
1420 WALNUT STREET
PHILADELPHIA, PENNSYLVANIA 19102-4097

——

(215) 735-9099
FAX (215) 985-1666

NEW JERSEY OFFICE
450 TILTON ROAD, SUITE 220
NORTHFIELD, NEW JERSEY 08225
(609) 407-0222
FAX (609) 484-0897

September 29, 2000

Wendy Dullea Bowie, Esq.
Ira Weinstock, P.C.
800 North Second Street, Suite 100
Harrisburg, PA 17102

Joseph M. Hill, Jr., Esq.
124 South 8th Street
Lebanon, Pennsylvania 17042

Re:    Central Pennsylvania Teamsters Pension Fund
       Krause v. Krause, Domestic Relations Order

       Participant: Gerald K. Krause, Sr., SS# 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
       Alternate Payee Maureen L. Krause, SS#: 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

Dear Ms. Bowie and Mr. Hill:

This firm represents the Central Pennsylvania Teamsters Pension Fund ("Fund"). I have reviewed the proposed domestic relations order that you submitted to the Fund on behalf of the above-referenced parties. Enclosed are a copy of the Fund's Domestic Relations Order Procedures which are used to evaluate orders submitted to the Fund. However, I am writing to advise you that the order **cannot** be deemed by the Fund's Trustees a Qualified Domestic Relations Order, as that term is defined in section 414(p) of the Internal Revenue Code of 1986, as amended ("IRC"), and section 206(d) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") because the Participant is currently deceased.

According to the Fund records, the Participant died on August 6, 2000. Therefore, pursuant to the Plan, the Participant's interest in his account balance has passed to his beneficiaries. The proposed order requires the assignment to the Alternate Payee a portion of the Participant's balance equal to 66.67% of the contributions to the Fund between February 25, 1984 and May 7, 1995, plus investment earnings or losses attributable to that amount, plus $15,000.00. Because the Participant no longer has an interest in the account, there is no interest to assign to the Alternate Payee.

Exhibit "E"

Wendy Dullea Bowie, Esq.
Joseph M. Hill, Jr., Esq.
September 29, 2000
Page 2

If you have any questions please call.

Very truly yours,

Jeremy E. Meyer

Enclosure

cc:    Joseph J. Samolewicz, Administrator
       Richard Weiler, Pension Benefits Manager

MAUREEN L. KRAUSE,
     MOVANT

    VS.

GERALD K. KRAUSE, SR., dec'd.,
et al,
     RESPONDENTS

: IN THE COURT OF COMMON PLEAS
: LEBANON COUNTY, PENNSYLVANIA
: CIVIL ACTION – FAMILY DIVISION
:
: NO. 1994-20522
:
:
:
: IN DIVORCE

**ORDER OF COURT**

AND NOW, to wit, this 30th day of October, 2000, upon

consideration of the within Motion To Freeze Assets, it is hereby ORDERED AND

DECREED as follows:

    1. TO: The Executor/Executrix, Administrator/Administratrix and any other who

may be acting in a fiduciary capacity with respect to the Estate of Gerald K. Krause, Sr.:

You are immediately ordered to freeze all assets comprising the Estate of Gerald K.

Krause, Sr. and you are prohibited from cashing in, conveying, redeeming, transferring or

otherwise distributing to anyone any funds or assets comprising the Estate of Gerald K.

Krause, Sr., until further Order of this Court.

    2. TO: Barbara Krause: You are immediately and temporarily enjoined from

withdrawing, transferring, conveying, redeeming, surrendering or in any way disposing

of any assets you have received or might be entitled to receive as an heir of the Estate of

Gerald K. Krause, Sr. You are further immediately and temporarily enjoined from

withdrawing, transferring, conveying, redeeming, surrendering or in any way disposing

EXHIBIT "B"

of any pension/retirement benefits you have received or might be entitled to receive as beneficiary of Gerald K. Krause, Sr.'s pension/retirement benefit plans. Consequently, said assets are frozen until further Order of this Court.

3. A hearing on the within Motion To Freeze Assets is scheduled for Thursday, November 2, 2000 at 2:00 p.m. before The Honorable Robert J. Eby, President Judge, Courtroom 1, Lebanon City-County Municipal Building, 400 South 8th Street, Lebanon, Pennsylvania.

This Order shall take effect immediately and shall continue until further Order of Court.

BY THE COURT:

_____ J.

| MAUREEN L. KRAUSE, | : IN THE COURT OF COMMON PLEAS |
|---|---|
| MOVANT | : LEBANON COUNTY, PENNSYLVANIA |
| | : CIVIL ACTION – FAMILY DIVISION |
| VS. | : |
| | : NO. 1994-20522 |
| GERALD K. KRAUSE, SR., dec'd., | : |
| et al. | : |
| RESPONDENTS | : IN DIVORCE |

## MOTION TO FREEZE ASSETS

AND NOW, comes the Movant, Maureen L. Krause, by her attorney, Joseph M. Hill, Jr., Esquire, and files the within Motion and in support thereof, states as follows:

1. Movant is Maureen L. Krause, a sui juris individual residing at 109 Palm City Park, Annville, Pennsylvania 17003.

2. Respondent is the Estate of Gerald K. Krause, Sr. (hereinafter "Decedent"), c/o Ira H. Weinstock, P.C., Suite 100, 800 North Second Street, Harrisburg, Pennsylvania 17102.

3. Respondent is Barbara Krause (hereinafter "Respondent"), a sui juris individual, believed to be residing at 845 Russell Drive, Annville, Pennsylvania 17003, who allegedly married decedent in May 2000 and who is believed to be the beneficiary of Decedent's pension/retirement benefits, c/o Wendy Dullea Bowie, Esquire, Ira H. Weinstock, P.C., Suite 100, 800 North Second Street, Harrisburg, Pennsylvania 17102.

4. The Decedent died on August 6, 2000.

5. Petitioner and Decedent were formerly husband and wife, having been divorced by Decree in Divorce dated March 16, 1999 by The Honorable Robert J. Eby, President Judge, Court of Common Pleas of Lebanon County.

6. The aforementioned Decree in Divorce incorporated a Property Settlement Agreement between the parties dated March 4, 1999.

7. Paragraph 11 of said Property Settlement Agreement awarded Movant the following sums:

(a) two-thirds of the marital portion of Decedent's defined benefit plan, valued at separation @ $16,571.00, to wit, $11,047.89;

(b) two-thirds of the marital portion of Decedent's defined contribution plan, valued at separation @ $55,142.77, to wit, $36,763.68; and

(c) two-thirds of any increase in value accrued on each of Decedent's pension plans from the date of separation to the date of distribution.

8. In addition, paragraph 17 of said Property Settlement Agreement awarded Movant an extra $15,000.00 from Decedent's defined contribution plan, in lieu of additional alimony.

9. Accordingly, pursuant to said Property Settlement Agreement and Decree in Divorce, Movant is entitled to the total sum of $62,811.57, plus two-thirds of any increase in value of each of Decedent's pension plans from the date of separation to the date of distribution.

10.  On  October 25, 2000 Movant filed a Petition To Enforce Decree In Divorce, and on October 26, 2000 Your Honorable Court issued a Rule upon Respondents, a copy of which Rule and Petition are attached hereto and marked Exhibit "A".

11.  That Movant has not received these funds which were decreed to her, and she files this Motion in order to protect her economic rights in the Decree In Divorce.


WHEREFORE, Movant respectfully requests Your Honorable Court to grant the following relief:

(a)  issue an Order freezing the assets of the Estate of Gerald K. Krause, Sr.;

(b)  issue an Order freezing the assets of Barbara Krause that she received and/or is entitled to receive under the Estate of Gerald K. Krause, Sr.

(c)  issue an Order freezing the assets of Barbara Krause that she received and/or is entitled to receive as beneficiary from Decedent's pension/retirement benefits plans.

(d)  such other relief as Your Honorable Court deems appropriate.


Dated:  October 27, 2000

Joseph M. Hill, Jr., Esquire
Attorney for Movant
124 South 8th Street
Lebanon, PA  17042
(717) 272-7171
I.D. #24984

## VERIFICATION

I verify that the statements made in the foregoing Motion To Freeze Assets are true and correct. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S.A. section 4904 relating to unsworn falsification to authorities.

Dated: 10/27/00

Maureen L. Krause
Maureen L. Krause

MAUREEN L. KRAUSE,    : IN THE COURT OF COMMON PLEAS
        PETITIONER   : LEBANON COUNTY, PENNSYLVANIA
                         : CIVIL ACTION – FAMILY DIVISION
      VS.           :
                         : NO.  1994-20522
GERALD K. KRAUSE, SR., dec'd., :
et al,                   :
        RESPONDENT   : IN DIVORCE

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that I have, this day, provided the Prothonotary's Office

with envelopes, having affixed proper postage thereto, for service of the within document

by first class mail, addressed as follows:

               Ira H. Weinstock, P.C.
               Suite 100
               800 North Second Street
               Harrisburg, PA  17102

               Attorney for the Estate of Gerald K. Krause, Sr.

               Wendy Dullea Bowie, Esquire
               Ira H. Weinstock, P.C
               Suite 100
               800 North Second Street
               Harrisburg, PA  17102

               Attorney for Barbara Krause

Dated:  October 27, 2000

                       _____
                       Joseph M. Hill, Jr., Esquire
                       Attorney for Movant
                       124 South 8th Street
                       Lebanon, PA  17042
                       (717) 272-7171
                       ID #24984

08-17-00 12:06 From-CENTRAL PA TEAMSTERS 6103209256 T-787 P.03/04 F-798

MAUREEN L. KRAUSE, : IN THE COURT OF COMMON PLEAS
  MOVANT/PLAINTIFF : LEBANON COUNTY, PENNSYLVANIA
        : CIVIL ACTION - FAMILY DIVISION
        :
VS.        :
        : NO. 1994-20522
        :
GERALD K. KRAUSE, SR., deceased :
  RESPONDENT/DEFENDANT : IN DIVORCE

## ORDER OF COURT

 AND NOW, to wit, this 16th day of ___August___, 2000, upon consideration of the within Motion To Freeze Pension/Retirement Benefits, it is hereby ORDERED AND DECREED as follows:

 (1) TO: Central Pennsylvania Teamsters Pension Fund: You are immediately ordered to freeze pension/retirement plans, accounts, funds, or similar assets in the amount of $62,811.57 in the name of Gerald K. Krause, Sr., or in which Gerald K. Krause, Sr. has an interest; and you are also prohibited from cashing in, conveying, transferring or otherwise distributing to anyone any funds, including but not limited to the following:

 (a) Central Pennsylvania Teamsters Retirement Income Plan;

 (b) Yellow Freight Central Pennsylvania Teamsters Defined Benefit Plan.

 This Order shall take effect immediately and shall continue until further Order of Court.

BY THE COURT:

/s/ ROBERT J. EBY, P.J.

PURSUANT TO RULE 236
You are hereby notified
that this order has been
entered in this case.

8/11/2000 CERTIFIED FROM THE RECORD

Anita B Hauffman
By Prothonotary Ramsey Deputy

**CLEARY & JOSEM LLP**

JOSEPH T. CLEARY*

WILLIAM T. JOSEM*

MARILYN T. JAMAIN

REGINA C. HERTZIG⁺

JEREMY E. MEYER⁺

* ALSO ADMITTED IN NEW YORK AND NEW JERSEY
⁺ ALSO ADMITTED IN NEW JERSEY

ATTORNEYS AND COUNSELLORS AT LAW

SUITE 300

1420 WALNUT STREET

PHILADELPHIA, PENNSYLVANIA 19102-4097

———

(215) 735-9099

FAX (215) 985-1666

NEW JERSEY OFFICE

450 TILTON ROAD, SUITE 220

NORTHFIELD, NEW JERSEY 08225

(609) 407-0222

FAX (609) 484-0897

SEP 1 4 2000

September 12, 2000

Joseph M. Hill, Jr.
124 South 8th Street
Lebanon, Pennsylvania 17042

Re:   Central Pennsylvania Teamsters Pension Fund
      <u>Krause v. Krause</u>, Order to Freeze Retirement Account

      <u>Participant</u>: Gerald K. Krause, Sr., SS# 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

Dear Mr. Hill:

This firm represents the Central Pennsylvania Teamsters Pension Fund (the "Fund"). The Fund recently received a Order directing the Fund to freeze assets equal to $62,811.57 from the pension account of Gerald K. Krause, Sr. This is to advise you that the Fund cannot comply with the order.

Under Section 414(p) of the Internal Revenue Code of 1986, as amended ("IRC"), 26 U.S.C. §414(p) and Section 206(d) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1056(d) the Fund is generally required to provide the benefits required under the Plan documents and is prohibited from assigning or alienating the participants benefits, except, among other limited circumstances, pursuant to a Qualified Domestic Relations Order ("QDRO"). A domestic relations order is "qualified" only if it satisfies certain legal requirements as set forth in the above sections of IRC and ERISA. These requirements are set forth in the Central Pennsylvania Teamsters Pension Fund Domestic Relations Order Procedure, a copy of which is enclosed for your review.

The order submitted does not qualify as a QDRO because:

(1) it does not assign a right of payment of Plan benefits to the "alternate payee". An "alternate payee" is the spouse, former spouse, child, or other dependant of a participant.

(2)  it does not include the address of the Participant (Gerald K. Krause, Sr.),

(3) it does not name and provide the mailing address of the alternate payee(s),

**EXHIBIT "D"**

Joseph M. Hill, Jr.
September 12, 2000
Page 2

If you would like to submit a domestic relations order (either proposed or executed) that complies with the above requirements, please send it to: Richard R. Weiler, Pension Benefits Manager, Central Pennsylvania Teamsters Pension Fund, P.O. Box 15223, Reading, PA 19612-5223. For your convenience, we have enclosed copies of the fund's Model Domestic Relations Orders. If you have any questions, please call.

Very truly yours,

Jeremy E. Meyer

Enclosures

cc:    Wendy D. Bowie, Esquire
       Joseph J. Samolewicz, Administrator
       Richard Weiler, Pension Benefits Manager

JOSEPH T. CLEARY*
WILLIAM T. JOSEM*
MARILYN T. JAMAIN
REGINA C. HERTZIG+
JEREMY E. MEYER+

* ALSO ADMITTED IN NEW YORK AND NEW JERSEY
+ ALSO ADMITTED IN NEW JERSEY

# CLEARY & JOSEM LLP

ATTORNEYS AND COUNSELLORS AT LAW

SUITE 300

1420 WALNUT STREET

PHILADELPHIA, PENNSYLVANIA 19102-4097

———

(215) 735-9099

FAX (215) 985-1666

NEW JERSEY OFFICE
450 TILTON ROAD, SUITE 220
NORTHFIELD, NEW JERSEY 08225
(609) 407-0222
FAX (609) 484-0897

RECEIVED
OCT 5 2000

September 29, 2000

Wendy Dullea Bowie, Esq.
Ira Weinstock, P.C.
800 North Second Street, Suite 100
Harrisburg, PA 17102

Joseph M. Hill, Jr., Esq.
124 South 8th Street
Lebanon, Pennsylvania 17042

Re:     Central Pennsylvania Teamsters Pension Fund
        <u>Krause v. Krause</u>, Domestic Relations Order

        <u>Participant</u>: Gerald K. Krause, Sr., SS# 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
        <u>Alternate Payee</u> Maureen L. Krause, SS#: 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

Dear Ms. Bowie and Mr. Hill:

This firm represents the Central Pennsylvania Teamsters Pension Fund ("Fund"). I have reviewed the proposed domestic relations order that you submitted to the Fund on behalf of the above-referenced parties. Enclosed are a copy of the Fund's Domestic Relations Order Procedures which are used to evaluate orders submitted to the Fund. However, I am writing to advise you that the order **cannot** be deemed by the Fund's Trustees a Qualified Domestic Relations Order, as that term is defined in section 414(p) of the Internal Revenue Code of 1986, as amended ("IRC"), and section 206(d) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") because the Participant is currently deceased.

According to the Fund records, the Participant died on August 6, 2000. Therefore, pursuant to the Plan, the Participant's interest in his account balance has passed to his beneficiaries. The proposed order requires the assignment to the Alternate Payee a portion of the Participant's balance equal to 66.67% of the contributions to the Fund between February 25, 1984 and May 7, 1995, plus investment earnings or losses attributable to that amount, plus $15,000.00. Because the Participant no longer has an interest in the account, there is no interest to assign to the Alternate Payee.

EXHIBIT
"E"

Wendy Dullea Bowie, Esq.
Joseph M. Hill, Jr., Esq.
September 29, 2000
Page 2

       If you have any questions please call.

                      Very truly yours,

                      Jeremy E. Meyer

Enclosure

cc:    Joseph J. Samolewicz, Administrator
       Richard Weiler, Pension Benefits Manager

## CERTIFICATE OF SERVICE

I, Wendy Dullea Bowie, Esquire, hereby certify that on the date stated below I served the attached NOTICE OF REMOVAL on the persons named below, at the stated addresses, by hand delivery.

Anita Haulman, Prothonotary
Lebanon County Court of Common Pleas
400 South Eighth Street
Lebanon, PA  17042

Joseph M. Hill, Jr., Esquire
124 South 8th Street
Lebanon, PA  17042

Dated:  November 1, 2000

_____
WENDY DULLEA BOWIE