

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NO. 1:00-CV-1922
(Magistrate Judge Smyser)

FILED
HARRISBURG, PA
SEP 0 3 2002
MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

MAUREEN L. KRAUSE,

                Plaintiff

v.

GERALD K. KRAUSE, SR., dec'd, et al,

                Defendants

**BRIEF IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Jeffrey R. Schott, Esquire
**IRA H. WEINSTOCK, P.C.**
800 North Second Street
Harrisburg, PA 17102
Phone: 717-238-1657
   Attorney for Defendants

## STATEMENT OF FACTS

Gerald and Maureen Krause were married for approximately 10 years. (Exhibit A). They were married on February 25, 1984, until they separated in 1994, and Maureen Krause filed for divorce. (Ex. B) After a lengthy divorce proceeding, the parties ultimately reached a settlement of the equitable distribution of the marital estate that was memorialized in a Property Settlement Agreement signed by the parties in March, 1999. (Ex. A).

The Property Settlement Agreement awarded Maureen Krause two-thirds of the marital portion of Mr. Krause's defined benefit pension and two-thirds of the marital portion of his defined contribution pension, and required the parties to submit the necessary Qualified Domestic Relations Orders (QDROs) to the Court for signature. (*Id.*) On March 1, 1999 Attorney Bowie sent a letter to Attorney Hill, with revised copies of the parties' property settlement agreement, asking Attorney Hill to advise Attorney Bowie if he was preparing the necessary documents to finalize the parties' divorce. (Ex. D). On March 2, 1999 Attorney Hill forwarded copies of the Property Settlement Agreement to Mr. Krause's attorney with instruction to obtain Mr. Krause's signature and return the documents to him in the event Attorney Hill was to prepare all the necessary documents to finalize the parties' divorce. (Ex. E). On March 4, 1999, per Attorney Hill's instructions, Mr. Krause signed the Property Settlement Agreement and hand delivered the copies to Attorney Hill, so that Attorney Hill could prepare and

file the necessary papers to finalize the parties' divorce. (Exs. A, E).

The Decree of Divorce, ending the marriage between Gerald and Maureen Krause was issued by the Lebanon County Court of Common Pleas on March 16, 1999. (Ex. B). When Mr. Krause received the Divorce Decree in March, 1999, he reminded Maureen Krause that her lawyer would have to prepare the QDRO for submission to the Court. (Ex. G, ¶5).

After his separation from Maureen Krause, Gerald began residing with, and became engaged to Barbara Burton Krause. (*Id.* at ¶2). They lived together for several years before marrying. (*Id.* at ¶¶1-3). On December 27, 1999, Mr. Krause was hospitalized at the Ohio State University Hospital, where he underwent a biopsy that revealed that he suffered from pulmonary fibrosis, and learned that he would need to have a double lung transplant. (*Id.* at ¶8). Mr. Krause informed Maureen Krause, shortly thereafter, that he had been diagnosed with pulmonary fibrosis after tests at an Ohio hospital, and would require a double lung transplant. (Ex. H).

Mr. Krause was released from the hospital in mid-January, 2000. (Ex G, ¶9). He informed Maureen Krause that he hoped to return to work in April, 2000. (Ex. H). Mr. Krause attempted to return to work on April 1, 2000, however he was able to work only until April 8, 2000. (Ex.G, ¶10). On April 9, or 10, 2000, Mr. Krause was hospitalized on an emergency basis at Good Samaritan hospital for shortness of breath, and Maureen Krause was notified of that hospitalization. (*Id.* at ¶¶11-12).

On May 1, 2000, Mr. Krause was discharged from Good Samaritan Hospital and several hours later was rushed to Hershey Medical Center as his condition worsened. (*Id.* at ¶13). That night, Mr. Krause was life-flighted from Hershey Medical Center to Ohio State University Hospital - Main Campus. (*Id.* at ¶14). On May 3, 2000, Mr. Krause married Barbara Krause, at the Ohio State University Hospital. (*Id.* at ¶15).

Because Mr. Krause was hospitalized, and not able to work, on May 15, 2000, Mr. Krause's attorney served a Special Motion for Emergency Relief upon Attorney Hill and Plaintiff seeking to suspend Mr. Krause's alimony payments due to his hospitalization and life-threatening illness. (Ex. I). On May 26, 2000, Attorney Hill forwarded his Answer to Emergency Petition to Attorney Bowie with a cover letter that acknowledged that Maureen Krause was aware that Gerald Krause was gravely ill and needed lung transplants. (Ex. J). The letter further stated that Maureen Krause would probably agree to a suspension of alimony payments until Gerald was able to return to work. (*Id.*).

On or about July 4 or 5, 2000, Maureen Krause, and Steven, Mr. Krause's grandson, visited him at the hospital in Ohio, and they remained there for approximately one week. (Ex. G, ¶17). Maureen Krause had been informed that Mr. Krause was in critical condition at the time, and was on life support. (*Id.* at ¶16). On August 6, 2000, Mr. Krause died. (*Id.* at ¶18).

During the time from Mr. Krause's illness to the time of his death, Maureen

-3-

Krause did not attempt to obtain a QDRO, nor did her attorney make any request to Mr. Krause's attorney to review and proposed Order for submission to the Court. (Joint Case Management Plan, ¶1.22). Following Gerald Krause's death, on or about August 16, 2000, Maureen Krause, through her attorney, filed a Motion requiring the Pension Plan to freeze Mr. Krause's pension accounts. (Ex. L.). On September 12, 2000, the Pension Plan advised Attorney Hill that it could not comply with the Court Order, because under ERISA the Plan was prohibited from alienating benefits except in limited circumstances, including a QDRO, and that the documents submitted by Attorney Hill to the Plan did not constitute a QDRO. (Ex. N). On or about September 18, 2000, Attorney Hill then submitted a proposed QDRO to the Plan on or about September 18, 2000. (Ex. O).

The proposed Order had not been submitted to a Court for signature, nor had Attorney Hill contacted Attorney Bowie before submitted the proposed Order to the Pension Plan. (*Id.*). The Pension Plan sent notice to Attorney Hill and Attorney Bowie, by a letter dated September 29, 2000, that the proposed Order that Attorney Hill had submitted to the Plan could not be deemed a QDRO because Mr. Krause was deceased, and there was no longer any benefit payable with respect to the participant that could be assigned through a QDRO. (Ex. P).

Attorney Hill next filed a Petition in Lebanon County Court, on or about October 25, 2000, to enforce the terms of the parties' Decree in Divorce. (Ex. Q). Within a day

or two of filing that Petition, Attorney Hill filed another Petition in Lebanon County Court to freeze the assets of the estate of Gerald Krause, and to freeze the pension benefits that Barbara Krause received or may be eligible to receive from the Pension Plan. (Ex. R).

The parties do not dispute the fact that no QDROs were ever submitted to the Court for signature by the Judge, and that no QDRO, signed by any Court was ever submitted to Mr. Krause's Pension Plans. (Joint Case Management Plan, ¶1.22).

Defendants filed a timely removal to federal court.

## QUESTIONS PRESENTED

I. SHOULD THE COURT GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BECAUSE PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED, AND BECAUSE DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW?

Suggested answer in the affirmative.

II. SHOULD THE COURT GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BECAUSE PLAINTIFF'S CLAIMS ARE BARRED BY THE DOCTRINE OF LACHES.

Suggested answer in the affirmative.

## ARGUMENT

I. PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND DEFENDANTS ARE ENTITLED TO JUDGMENT AS

## A MATTER OF LAW.

The Federal Rules of Civil Procedure provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving part is entitled to judgment as a matter of law. Fed. R. Civ. P 56(c). Summary judgment is appropriate when it is demonstrated that there is no genuine issue of material fact and the moving party is then entitled to judgment as a matter of law. *Troy Chemical Corp. v. Teamsters Union Local No. 408*, 37 F.2d 123 (3d Cir. 1994). A material fact is a fact which will affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Caroll v. Borough of State College*, 854 F.Supp. 1184 (M.D. Pa. 1994), *aff'd*, 47 F.3d 1160. The mere existence of a factual dispute will not defeat an otherwise properly supported motion for summary judgment; only disputes over facts that might affect the outcome of the case under governing law will properly preclude entry of summary judgment. *American Int'l Airways, Inc. v. American Int'l Group, Inc*, 816 F.Supp. 1058 (E.D. Pa. 1993); *Manzella v. Indianapolis Life Ins. Co.*, 814 F.Supp. 428 (E.D. Pa. 1993).

Rule 56(c) also mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A movant for summary judgment may satisfy his or her burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 326. The rule governing summary judgment does not allow the nonmoving party to rely merely upon bare assertions, conclusory allegations or suspicions; the nonmoving party must offer specific facts contradicting facts averred by the movant and thus demonstrate that there is a genuine issue for trial. *Jones v. Chieffo*, 833 F.Supp. 493 (E.D. Pa. 1993), *aff'd*, 22 F.3d 301. The nonmoving party may not simply replace conclusory allegations in the Complaint with conclusory allegations of affidavit, but must offer specific facts contradicting the facts averred by the movant, and must demonstrate that there is a genuine issue for trial. *Arnett v. Aspin*, 846 F.Supp. 1234 (E.D. Pa. 1994). Where the non-movant has the burden of proof at trial, the movant must demonstrate only that there is a lack of evidence to support the non-movant's claim; when the movant satisfies this burden, the nonmovant cannot rest solely upon allegations contained in the pleadings to defeat a motion for summary judgment. *Weinstein v. Bullick*, 824 F.Supp. 1193 (E.D. Pa. 1993).

Plaintiff is, in essence, suing to overturn the provisions of ERISA. Defendants removed the matter to federal court because the Plaintiff's motions and petitions, filed in the Lebanon County Court of Common Pleas clearly raised ERISA claims, as Plaintiff is seeking to deprive Barbara Krause of an ERISA-mandated benefit.

Moreover, Plaintiff never challenged removal to federal court, and the time has passed in which Plaintiff may do so. Accordingly, this Court has complete jurisdiction of Plaintiff's claims.

Under §502(e)(1) of ERISA, the federal courts have **exclusive** jurisdiction over all suits seeking equitable relief against an ERISA plan, and under §502(f) of ERISA the federal courts have **original** jurisdiction over all suits seeking to recover benefits, clarify rights, or enforce rights under an ERISA plan. 29 U.S.C. §1132(e)(1) & (f). Plaintiff's Complaint and Petition seek equitable relief against the estate of Gerald Krause, and against Barbara Krause, and an analysis of Plaintiff's claims necessarily includes analysis of the provisions of ERISA.

Maureen Krause, having failed to force the Pension Fund to recognize a non-existent QDRO, is now seeking to have this Court to recognize the existence of a QDRO which never existed. Maureen Krause admits that she was not married to Gerald Krause at the time of his death, and that Barbara Krause is his widow. Because Maureen Krause was not Gerald Krause's surviving spouse, within the meaning of ERISA, she was not entitled to a Qualifed Pre-retirement Survivor Annuity (QPSA). 29 U.S.C. §1055(a)(2) and (b)(1).

Maureen Krause now alleges that she is entitled to a portion of her ex-husband's pension benefit because the parties had agreed in a property settlement agreement that she would get a portion of his pension benefit, and that she should have the benefit of

that agreement despite the fact that the Court Order entered in her divorce required the parties to prepare a QDRO and submit it to the Court for signature, despite the fact that the parties never did so, and despite the fact that the parties never submitted a QDRO to the Pension Fund.

Under ERISA, pension plans must provide that the benefits available under the plan cannot be assigned or alienated except through an order which is determined to be a QDRO. 29 U.S.C. §1056(d)(1) and (d)(3)(A). Maureen Krause admits that there never was any QDRO; it was never prepared, never submitted to the Court for signature, and never submitted to the Fund. Maureen Krause cannot now seek relief from Barbara Krause because Maureen Krause's attorney did not prepare a QDRO, did not submit a QDRO to the Court for signature, and did not submit a QDRO to the Fund. Although Maureen Krause may have a cause of action available to her, it is not against Barbara Krause or the estate of Gerald Krause. Neither Defendant played any role in Plaintiff's failure to prepare a QDRO, failure to submit a QDRO to the Court for signature, and failure to submit a signed QDRO to the Pension Fund.

Gerald Krause, who is now deceased, no longer has any rights, interest, or entitlement to benefits under the Fund. He is not a participant in the Fund. He is dead. The moment Gerald Krause died, Barbara Krause's right to a QPSA irrevocably vested in her by automatic operation of federal law. ERISA requires that each pension plan subject to ERISA "**shall**" provide that if a vested participant dies before receiving

pension benefits, and if the participant has a surviving spouse, then a Qualified Pre-retirement Survivor Annuity "**shall**" be provided to the surviving spouse. 29 U.S.C. §1055(a)(2) (Emphasis added). Under ERISA, a QPSA is a survivor annuity for the life of the surviving spouse of the participant which is not less that than 50% of the amount which would be payable over the joint lives of the participant and the surviving spouse (or the actuarial equivalent thereof). 29 U.S.C. §1055(d)(1) and (e)(1).

The fact that the QPSA irrevocably vests upon the death of the participant is demonstrated by §205(g)(2) of ERISA which provides that if the present value of the QPSA is greater than $3,500 (later changed by ERISA to $5,000), and where the surviving spouse consents to the distribution in writing, a pension plan "**may immediately distribute the present value of such annuity.**" 29 U.S.C. §1055(g)(2) (Emphasis added). Accordingly, from the instant that Gerald Krause died, Defendant Barbara Krause had an irrevocably vested right to distribution of the QPSA, which did not come to her through any estate of Gerald Krause, or any designation of beneficiary by Gerald Krause, but by automatic operation of federal law. The Plaintiff has no claim to Barbara Krause's benefit, nor may Plaintiff seek distribution of any amounts now vested in Barbara Krause.

ERISA prohibits the assignment or alienation of pension benefits except through a QDRO. 29 U.S.C. §1056(d)(1) and d(3)(A). Under ERISA, a qualified domestic relations order is a domestic relations order which creates or recognizes the existence

of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable "**with respect to a participant** under the plan." 29 U.S.C. §1056(d)(3)(B)(I)(I) (Emphasis added).

The benefits sought by Maureen Krause are not benefits payable with respect to **a participant** under the plan. At the time of Mr. Krause's death, Barbara Krause's rights to QPSA became irrevocably vested in Barbara as the **surviving spouse**, of a participant. The moment that Gerald Krause died, the only benefit available under the Fund was the QPSA irrevocably vested in Barbara Krause as his surviving spouse. The benefits which Maureen Krause seeks are no longer benefits "**payable with respect to a *participant*.**" Because the QPSA irrevocably vested in Barbara Krause at the instant that her husband died, Maureen Krause now seeks benefits which are **payable with respect to a *beneficiary*** under ERISA, and **benefits payable with respect to a beneficiary** may not be assigned or alienated, even through a QDRO. 29 U.S.C. §1056(d)(1); *Boggs v. Boggs*, 520 U.S. 833; *Hopkins v. AT&T Global Information Solutions Co.*, 105 F.3d 153, 20 EBC 2418 (4th Cir. 1997).

Maureen Krause knew that the Court of Court of Common Pleas of Lebanon County, as part of her divorce from Gerald Krause, ordered the parties to prepare a QDRO for submission to the Court, knew that none had been prepared or submitted to the Court or the Pension Plan, knew for months that Gerald Krause was gravely ill, and she did nothing to see that an Order was prepared and submitted to the Court, to protect

her rights, until after Gerald's death. Furthermore, Maureen Krause was once employed by a major Columbus, Ohio law firm, as their office manager, and would have been aware of the significance of the Court's Order. Now, Maureen Krause wants this Honorable Court to Order Barbara Krause to order the alienation of a benefit **payable with respect to beneficiary**, Barbara Krause, and to pay her the amounts she could have received in the divorce if a QDRO had been entered, all in violation of the anti-alienation provisions of ERISA, and without a QDRO.

ERISA's anti-alienation provisions state that benefits provided under the plan may not be assigned or alienated. 29 U.S.C. §1056(d)(1). ERISA's regulations define "alienation or assignment" as any direct or indirect arrangement whereby a party acquires from a participant or beneficiary an interest enforceable against a plan to all or any part of a plan benefit payment which is or may become payable to the participant or beneficiary. 26 CFR §1.401(a)-12(c)(1)(ii). QDROs are exempt from ERISAs anti-alienation provisions, but no QDRO was ever prepared, ever signed by a Court, or ever submitted to the Pension Fund.

The benefit that Barbara Krause will receive from the defined benefit portion of the Plan, under the terms of the Plan is an automatic QPSA payable as monthly payments that are 50% of the amount of monthly pension that Gerald Krause would have received, from the date of Gerald Krause's death to the date of Barbara Krause's death, with the amount of monthly benefit calculated based upon Barbara's Krause's

-12-

age at the time of Gerald Krause's death, and her life expectancy. Furthermore, Maureen Krause has failed to conduct any discovery, nor retain an expert to determine the benefit she would have received under the defined portion of the Plan, or how that amount could be apportioned from the monthly benefit Barbara Krause is to receive. The Property Settlement Agreement that Maureen Krause relies upon apportioned to her two-thirds of **Gerald Krause's** defined benefit plan. The monies that Maureen Krause is attempting to take from Barbara Krause are not Gerald Krause's defined benefit or defined contribution monies, and therefore, were not and could not, be apportioned by the Property Settlement Agreement after Gerald Krause's death, even through a QDRO. Moreover, because of the fact that Barbara Krause will, by operation of law, receive a benefit that is only 50% of Gerald Krause's monthly benefit, Maureen Krause is actually trying to claim more money than Barbara Krause will actually receive.

Maureen Krause cannot simply rely upon the pleadings in this matter to avoid summary judgment. She must point to depositions and discovery which raise a disputed issue of material fact. She cannot do so. She has not conducted any discovery, and the time to do so has passed. She has not discovered that Gerald Krause's estate was a negative estate, whose liabilities exceeded his assets, and that there is nothing in the estate from which to pay any monies to Maureen Krause. Maureen Krause cannot, under ERISA, attempt to claim any portion of the benefits

payable to Barbara Krause, and any state law claim she has raised in her effort to do so are pre-empted by ERISA. *Boggs v. Boggs*, 520 U.S. 833.

Barbara Krause cannot, under ERISA, alienate the benefit payable to her, nor, because of ERISAs pre-emption provisions, can the Court impose a constructive trust upon her for benefits paid and payable to her under the QPSA she is entitled to receive, and which was not apportioned by the Property Settlement Agreement. Accordingly, because Maureen Krause failed to obtain a QDRO before Gerald Krause died, and because a QDRO cannot be obtained after a participant's death, the monies she is seeking are not the monies she could have obtained under the Property Settlement Agreement. The monies apportioned under the Property Settlement Agreement ceased to exist the moment Gerald Krause died. Maureen Krause has, therefore, failed to state a claim upon which relief can be granted and her claims must, therefore, be dismissed.

## II.   PLAINTIFF'S CLAIMS ARE BARRED BY THE DOCTRINE OF LACHES.

It goes without saying that equitable claims are generally covered by the doctrine of laches, which bars suit by one who has, in effect, sat upon their rights, or failed to exercise their rights in a timely manner. In this case, Maureen Krause failed to pursue completion of the QDRO in a timely manner despite ample notice and opportunity to do so. In the interim, her ex-husband remarried and later died. Maureen Krause knew of the existence of the relationship between Gerald Krause and Barbara Burton Krause.

By failing to take prompt action to preserve any rights she may have had under a QDRO, any benefit to which she may have been entitled failed when Gerald Krause died and the QPSA irrevocably vested in Barbara Krause. Barbara Krause, by operation of federal law, will receive less than Maureen would have received under a QDRO. Under ERISAs QPSA provisions Barbara will receive a monthly benefit equal to 50% of the benefit that Gerald Krause would have received, and the remainder of any benefit simply fails. Because a QDRO was not prepared, the remainder of that benefit is lost, as are the amounts that could have been segregated to Maureen Krause under a QDRO. Because Maureen Krause failed to act promptly to protect her own interest, knowing for months that her ex-husband was gravely ill, her claim as to all Defendants is barred.

## Conclusion

For these reasons, Defendants respectfully request that this Honorable Court grant its Motion for Summary Judgment.

Respectfully Submitted,

**IRA H. WEINSTOCK, P.C.**
800 North Second Street
Harrisburg, PA 17102
Phone: 717-238-1657

By: _____
JEFFREY R. SCHOTT

By: _____
      JASON M. WEINSTOCK

## CERTIFICATE OF SERVICE

I, Jeffrey R. Schott, Esquire, hereby certify that on the date stated below I served the attached BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT on the persons named below, at the stated addresses, by first class postage paid United States mail.

>Joseph M. Hill, Jr., Esquire
>124 South 8th Street
>Lebanon, PA  17042

Dated:  September 3, 2002

_____
JEFFREY R. SCHOTT