

2 Ct

15
9/18/0
~fy

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

NO. 1:00-CV-1922
(Magistrate Judge Smyser) ✓

FILED
HARRISBURG, PA

SEP 1 7 2002

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

---

MAUREEN L. KRAUSE,

Plaintiff

v.

GERALD K. KRAUSE, SR., dec'd, et al,

Defendants

---

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINIFF'S MOTION FOR SUMMARY JUDGMENT

---

Jeffrey R. Schott, Esquire
**IRA H. WEINSTOCK, P.C.**
800 North Second Street
Harrisburg, PA 17102
Phone: 717-238-1657
    Attorney for Defendants

## STATEMENT OF FACTS

Gerald and Maureen Krause were married for approximately 10 years. (Exhibit A).[1] They were married on February 25, 1984, until they separated in 1994, and Maureen Krause filed for divorce. (Ex. B)  After a lengthy divorce proceeding, the parties ultimately reached a settlement of the equitable distribution of the marital estate that was memorialized in a Property Settlement Agreement signed by the parties in March, 1999. (Ex. A).

The Property Settlement Agreement awarded Maureen Krause two-thirds of the marital portion of Mr. Krause's defined benefit pension and two-thirds of the marital portion of his defined contribution pension, and required the parties to submit the necessary Qualified Domestic Relations Orders (QDROs) to the Court for signature. (*Id.*)  On March 1, 1999 Attorney Bowie sent a letter to Attorney Hill, with revised copies of the parties' property settlement agreement, asking Attorney Hill to advise Attorney Bowie if he was preparing the necessary documents to finalize the parties' divorce. (Ex. D).  On March 2, 1999 Attorney Hill forwarded copies of the Property Settlement Agreement to Mr. Krause's attorney with instruction to obtain Mr. Krause's signature and return the documents to him in the event Attorney Hill was to prepare all the necessary documents to finalize the parties' divorce. (Ex. E).  On March 4, 1999,

---

[1] The exhibits referred to in this Brief are the Exhibits in Support of Defendants' Motion for Summary Judgment which were previously filed with this Honorable Court

per Attorney Hill's instructions, Mr. Krause signed the Property Settlement Agreement and hand delivered the copies to Attorney Hill, so that Attorney Hill could prepare and file the necessary papers to finalize the parties' divorce. (Exs. A, E).

The Decree of Divorce, ending the marriage between Gerald and Maureen Krause was issued by the Lebanon County Court of Common Pleas on March 16, 1999. (Ex. B). When Mr. Krause received the Divorce Decree in March, 1999, he reminded Maureen Krause that her lawyer would have to prepare the QDRO for submission to the Court. (Ex. G, ¶5).

After his separation from Maureen Krause, Gerald began residing with, and became engaged to Barbara Burton Krause. (*Id.* at ¶2). They lived together for several years before marrying. (*Id.* at ¶¶1-3). On December 27, 1999, Mr. Krause was hospitalized at the Ohio State University Hospital, where he underwent a biopsy that revealed that he suffered from pulmonary fibrosis, and learned that he would need to have a double lung transplant. (*Id.* at ¶8). Mr. Krause informed Maureen Krause, shortly thereafter, that he had been diagnosed with pulmonary fibrosis after tests at an Ohio hospital, and would require a double lung transplant. (Ex. H).

Mr. Krause was released from the hospital in mid-January, 2000. (Ex G, ¶9). He informed Maureen Krause that he hoped to return to work in April, 2000. (Ex. H). Mr. Krause attempted to return to work on April 1, 2000, however he was able to work only until April 8, 2000. (Ex. G, ¶10). On April 9, or 10, 2000, Mr. Krause was

hospitalized on an emergency basis at Good Samaritan hospital for shortness of breath, and Maureen Krause was notified of that hospitalization. (*Id.* at ¶¶11-12).

On May 1, 2000, Mr. Krause was discharged from Good Samaritan Hospital and several hours later was rushed to Hershey Medical Center as his condition worsened. (*Id.* at ¶13). That night, Mr. Krause was life-flighted from Hershey Medical Center to Ohio State University Hospital - Main Campus. (*Id.* at ¶14). On May 3, 2000, Mr. Krause married Barbara Krause, at the Ohio State University Hospital. (*Id.* at ¶15).

Because Mr. Krause was hospitalized, and not able to work, on May 15, 2000, Mr. Krause's attorney served a Special Motion for Emergency Relief upon Attorney Hill and Plaintiff seeking to suspend Mr. Krause's alimony payments due to his hospitalization and life-threatening illness. (Ex. I). On May 26, 2000, Attorney Hill forwarded his Answer to Emergency Petition to Attorney Bowie with a cover letter that acknowledged that Maureen Krause was aware that Gerald Krause was gravely ill and needed lung transplants. (Ex. J). The letter further stated that Maureen Krause would probably agree to a suspension of alimony payments until Gerald was able to return to work. (*Id.*).

On or about July 4 or 5, 2000, Maureen Krause, and Steven, Mr. Krause's grandson, visited him at the hospital in Ohio, and they remained there for approximately one week. (Ex. G, ¶17). Maureen Krause had been informed that Mr. Krause was in critical condition at the time, and was on life support. (*Id.* at ¶16). On August 6, 2000,

Mr. Krause died. (*Id.* at ¶18).

During the time from Mr. Krause's illness to the time of his death, Maureen Krause did not attempt to obtain a QDRO, nor did her attorney make any request to Mr. Krause's attorney to review and proposed Order for submission to the Court. (Joint Case Management Plan, ¶1.22). Following Gerald Krause's death, on or about August 16, 2000, Maureen Krause, through her attorney, filed a Motion requiring the Pension Plan to freeze Mr. Krause's pension accounts. (Ex. L.). On September 12, 2000, the Pension Plan advised Attorney Hill that it could not comply with the Court Order, because under ERISA the Plan was prohibited from alienating benefits except in limited circumstances, including a QDRO, and that the documents submitted by Attorney Hill to the Plan did not constitute a QDRO. (Ex. N). On or about September 18, 2000, Attorney Hill then submitted a proposed QDRO to the Plan on or about September 18, 2000. (Ex. O).

The proposed Order had not been submitted to a Court for signature, nor had Attorney Hill contacted Attorney Bowie before submitted the proposed Order to the Pension Plan. (*Id.*). The Pension Plan sent notice to Attorney Hill and Attorney Bowie, by a letter dated September 29, 2000, that the proposed Order that Attorney Hill had submitted to the Plan could not be deemed a QDRO because Mr. Krause was deceased, and there was no longer any benefit payable with respect to the participant that could be assigned through a QDRO. (Ex. P).

Attorney Hill next filed a Petition in Lebanon County Court, on or about October 25, 2000, to enforce the terms of the parties' Decree in Divorce. (Ex. Q). Within a day or two of filing that Petition, Attorney Hill filed another Petition in Lebanon County Court to freeze the assets of the estate of Gerald Krause, and to freeze the pension benefits that Barbara Krause received or may be eligible to receive from the Pension Plan. (Ex. R).

The parties do not dispute the fact that no QDROs were ever submitted to the Court for signature by the Judge, and that no QDRO, signed by any Court was ever submitted to Mr. Krause's Pension Plans. (Joint Case Management Plan, ¶1.22).

Defendants filed a timely removal to federal court on November 1, 2000 under 28 U.S.C. §1441(a) and (b) and 28 U.S.C. §1446(a), (b) and (d), which was docketed as Case No. 1:CV-00-1922. Under 28 U.S.C. §1446(c)(4), the Court to which a case is removed is to examine the Notice of Removal promptly, and if it clearly appears on the face of the notice and any exhibits annexed thereto that removal should not be permitted, the court shall make an order for summary remand. In this case the Court did not act under 28 U.S.C. §1446(c)(4) and automatically remand the case to state court. Under 28 U.S.C. §1447(c), Plaintiff had a period of thirty (30) days after Defendants filed their Notice of Removal in which to file a Motion to Remand the case back to state court, but Plaintiff has never filed any Motion to Remand. At the Joint Case Management Conference in this matter, held before the Honorable Magistrate

Judge Smyser, Judge Smyser informed Plaintiff's attorney that the time in which to challenge removal of this case to federal court had long passed and that Plaintiff had, therefore, waived the ability to challenge both removal and federal court jurisdiction..

Plaintiff's Motion for Summary Judgment asks the Court to dismiss this matter and remand it to state court because it involves a divorce, the underlying issue concerns the meaning of the parties Property Settlement Agreement, that there is no diversity of citizenship, that there is no federal question, that the case involves domestic relations law, and that there is no federal jurisdiction.

## QUESTIONS PRESENTED

**I. SHOULD THE COURT DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT?**

Suggested answer in the affirmative.

## ARGUMENT

**I. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED.**

The Federal Rules of Civil Procedure provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving part is entitled to judgment as a matter of law.  Fed. R. Civ. P 56(c).  Summary judgment is appropriate when it is demonstrated that there is no genuine issue of material fact and the moving party is then

– 6 –

entitled to judgment as a matter of law.  *Troy Chemical Corp. v. Teamsters Union Local No. 408*, 37 F.2d 123 (3d Cir. 1994).  A material fact is a fact which will affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986);  *Caroll v. Borough of State College*, 854 F.Supp. 1184 (M.D. Pa. 1994), *aff'd*, 47 F.3d 1160.  The mere existence of a factual dispute will not defeat an otherwise properly supported motion for summary judgment; only disputes over facts that might affect the outcome of the case under governing law will properly preclude entry of summary judgment.  *American Int'l Airways, Inc. v. American Int'l Group, Inc*, 816 F.Supp. 1058 (E.D. Pa. 1993); *Manzella v. Indianapolis Life Ins. Co.*, 814 F.Supp. 428 (E.D. Pa. 1993).

Rule 56(c) also mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A movant for summary judgment may satisfy his or her burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 326.  The rule governing summary judgment does not allow the nonmoving party to rely merely upon bare assertions, conclusory allegations or suspicions; the nonmoving party must offer specific facts contradicting facts averred by the movant and thus demonstrate that there is a genuine issue for trial.  *Jones v. Chieffo*, 833 F.Supp. 493 (E.D. Pa. 1993), *aff'd*, 22 F.3d 301.

The nonmoving party may not simply replace conclusory allegations in the Complaint with conclusory allegations of affidavit, but must offer specific facts contradicting the facts averred by the movant, and must demonstrate that there is a genuine issue for trial. *Arnett v. Aspin*, 846 F.Supp. 1234 (E.D. Pa. 1994). Where the non-movant has the burden of proof at trial, the movant must demonstrate only that there is a lack of evidence to support the non-movant's claim; when the movant satisfies this burden, the nonmovant cannot rest solely upon allegations contained in the pleadings to defeat a motion for summary judgment. *Weinstein v. Bullick*, 824 F.Supp. 1193 (E.D. Pa. 1993).

Plaintiff's Motion to Enforce Divorce Decree, which began this action and resulted in Defendants removing the matter to federal court, specifically requests payment from Decedent's retirement benefits/pension plus two-thirds of any increase in value in said retirement benefits/pension from May 5, 1995 to the present. In essence, it asks for the amounts which were to be distributed through a Qualified Domestic Relations Order pursuant to the parties' divorce. The Motion was accompanied by an *ex parte* Order prohibiting Barbara Krause, Gerald Krause's widow, from withdrawing, transferring, conveying, redeeming, surrendering, or in any way disposing of any pension benefits she had received, or might be entitled to receive from Gerald K. Krause's pension/retirement/benefit plans. These are, on their faceclearly a claim for pension benefits which falls directly, and exclusively under

ERISA. No matter what you call them, they raise an ERISA claim. Plaintiff is, in essence, suing to overturn the provisions of ERISA. Defendants removed the matter to federal court because the Plaintiff's motions and petitions, filed in the Lebanon County Court of Common Pleas clearly raised ERISA claims, as Plaintiff is seeking to deprive Barbara Krause of an ERISA-mandated benefit. Moreover, Plaintiff never challenged removal to federal court, and the time has passed in which Plaintiff may do so. Accordingly, this Court has complete jurisdiction of Plaintiff's claims.

Under §502(e)(1) of ERISA, the federal courts have **exclusive** jurisdiction over all suits seeking equitable relief against an ERISA plan, and under §502(f) of ERISA the federal courts have **original** jurisdiction over all suits seeking to recover benefits, clarify rights, or enforce rights under an ERISA plan. 29 U.S.C. §1132(e)(1) & (f). Plaintiff's Complaint and Petition seek equitable relief against the estate of Gerald Krause, and against Barbara Krause, and an analysis of Plaintiff's claims necessarily includes analysis of the provisions of ERISA. ERISA specifically provides the federal courts with original and exclusive jurisdiction of the claims at issue here, without regard to the amount in controversy or diversity of citizenship.

Maureen Krause, having failed to force the Pension Fund to recognize a non-existent QDRO, is now seeking to have this Court to recognize the existence of a QDRO which never existed. Maureen Krause admits that she was not married to Gerald Krause at the time of his death, and that Barbara Krause is his widow. Because

– 9 –

Maureen Krause was not Gerald Krause's surviving spouse, within the meaning of ERISA, she was not entitled to a Qualifed Pre-retirement Survivor Annuity (QPSA). 29 U.S.C. §1055(a)(2) and (b)(1).

Maureen Krause now alleges that she is entitled to a portion of her ex-husband's pension benefit because the parties had agreed in a property settlement agreement that she would get a portion of his pension benefit, and that she should have the benefit of that agreement despite the fact that the Court Order entered in her divorce required the parties to prepare a QDRO and submit it to the Court for signature, despite the fact that the parties never did so, and despite the fact that the parties never submitted a QDRO to the Pension Fund. The Teamsters Pension Plan has already determined that the parties' Property Settlement Agreement does not constitute a Qualified Domestic Relations Order within the meaning of ERISA. The Pension Plan has already determined that Maureen Krause cannot seek approval of a QDRO now, because Gerald Krause has died, and upon his death, Barbara Krause became immediately and irrevocably vested in the Plan and that there were no longer any benefits payable with respect to Mr. Krause which could be distributed though a QDRO. Now Plaintiff seeks to interfere with the Plan's obligation to pay Barbara Krause the benefits that are payable with respect to her. This places the matter squarely under ERISA's jurisdiction and under federal jurisdiction.

As stated previously, it is apparent from Plaintiff's Motion that she is seeking a

portion of Gerald Krause's pension benefits because she failed to obtain a Qualified Domestic Relations Order when she had the opportunity to do so.  As the Fourth Circuit noted, however, survivor benefits vest in the participant's current spouse on the date the Participant retires or, in this case dies. *Hopkins v. AT&T Global Information Systems, Inc.*, 105 F.3d 153 (1997).  The QPSA provisions of ERISA provisions of ERISA, are the automatic form of distribution, mandated by ERISA, for the spouse of a participant who is married te the participant on the date of the participant's death or retirement, and even the participant is powerless to prevent this unless the spouse signs numerous papers permitting the participant to make that change.  (*Id.*).  The surviving spouses interest irrevocably vests immediately upon the death of the participant.  (*Id.*).  That the surviving spouse's interest irrevocable vests upon the death of the participant is consistent with the overall framework of ERISA, and balances the competing interests of former and present spouses.  (*Id.*).  The former spouse's interests can be protected by obtaining a QDRO before the participant dies or retires.  (*Id.*).  Because Barbara Krause's benefits vested in her immediately upon her husband's death, Maureen Krause can no longer obtain an order requiring any benefits payable to Barbara Krause to be paid to Maureen Krause because Barbara Krause's benefits are not benefits payable to a participant, as required by ERISA.  (*Id.*).

As in the United States Supreme Court discussed hereafter, surviving spouse's benefits and ERISAs QDRO provisions are central to the dispute here, are part of the

statute's mandatory participation and vesting requirements. *Boggs v. Boggs*, 520 U.S. 833 (1997).   These provisions provide detailed protection to spouses of plan participants, sometimes exceeding what their rights would be were community property, or equitable distribution laws the sole measure. (*Id.*).   ERISA's express preemption clause states that the Act shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. (*Id.*).   The Court is instructed to begin its analysis by simply asking if state law conflicts with the provisions of ERISA or operates to frustrate its objectives. (*Id.*).   Here, Plaintiff is attempting to use the state's domestic relations law to directly circumvent the express provisions of ERISA.   As the United States Supreme Court noted, when there is a conflict, it suffices to resolve the case, the Court need not inquire further. (*Id.*).   If state domestic relations laws were not pre-empted, as they relate to pension benefits, the income stream provided for by ERISA would be disrupted in the name of protecting a non-participant spouse. (*Id.*).   ERISA, therefore, pre-empts state domestic relations laws where they relate to pension and survivor benefits mandated by ERISA.

## Conclusion

For these reasons, Defendants respectfully request that this Honorable Court deny Plaintiff's Motion for Summary Judgment.

Respectfully Submitted,

**IRA H. WEINSTOCK, P.C.**
800 North Second Street
Harrisburg, PA 17102
Phone: 717-238-1657

By: _____
    JEFFREY R. SCHOTT


By: _____
    JASON M. WEINSTOCK

## CERTIFICATE OF SERVICE

I, Jeffrey R. Schott, Esquire, hereby certify that on the date stated below I served

the attached BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY

JUDGMENT on the persons named below, at the stated addresses, by first class

postage paid United States mail.

Joseph M. Hill, Jr., Esquire
124 South 8th Street
Lebanon, PA  17042

JEFFREY R. SCHOTT

Dated: September 17, 2002