IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MAUREEN L. KRAUSE,

            Plaintiff

v.

GERALD K. KRAUSE, SR., dec'd,
et al,

           Defendants

NO. 1:00-CV-1922
(Magistrate Judge Smyser)



FILED
HARRISBURG, PA
SEP 17 2002
MARY E. D'ANDREA, CLERK
Per_____ Deputy Clerk

**DEFENDANTS' COUNTER-STATEMENT OF
UNDISPUTED MATERIAL FACTS IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

As a preliminary matter, Defendants note that Plaintiff did not file a Statement of Undisputed Material Facts with her Motion for Summary Judgment and her Brief in Support thereof. Although Plaintiff did not file a Statement of Undisputed Material Facts, Defendants wish to do so, and have captioned it as a Counter-Statement of Undisputed Material Facts.

1. Gerald and Maureen Krause were married for approximately 10 years. (Exhibit A).[1]

2. Gerald and Maureen Krause were married on February 25, 1984, until they separated in 1994, and Maureen Krause filed for divorce. (Exhibit B).

3. Mr. Krause had been elected Union President in 1996, but lost his bid for re-election, and informed Maureen Krause, in November, 1998, that he had lost the election and would be returning to work as an over-the-road driver in January, 1999. (Exhibit C, Plaintiff's verified response to Defendants' Interrogatory #12).

4. After a lengthy divorce proceeding, including a Master's Hearing, the parties ultimately reached a settlement of the equitable distribution of the marital estate that was memorialized in a Property Settlement Agreement signed by the parties in March, 1999. (Exhibit A).

5. The Property Settlement Agreement awarded Maureen Krause two-thirds of the marital portion of Mr. Krause's defined benefit pension and two-thirds of the marital portion of his defined contribution pension, and required the parties to

---

[1] References to Exhibits in this Counter-statement of Undisputed Material Facts refer to the Exhibits that were filed in support of Defendants' Motion for Summary Judgment, which have already been filed with the Court in this matter.

submit the necessary Qualified Domestic Relations Orders to the Court for signature. (*Id.*).

6. On March 1, 1999 Attorney Bowie sent a letter to Attorney Hill, with revised copies of the parties' property settlement agreement, asking Attorney Hill to advise Attorney Bowie if he was preparing the necessary documents to finalize the parties divorce. (Exhibit D).

7. On March 2, 1999 Attorney Hill forwarded copies of the Property Settlement Agreement to Mr. Krause's attorney with instruction to obtain Mr. Krause's signature and return the documents to him in the event Attorney Hill was to prepare all the necessary documents to finalize the parties' divorce. (Exhibit E).

8. On March 4, 1999, per Attorney Hill's instructions, Mr. Krause signed the Property Settlement Agreement and hand delivered the copies to Attorney Hill, so that Attorney Hill could prepare and file the necessary papers to finalize the parties' divorce. (Exhibit A, Exhibit F).

9. The Decree of Divorce was issued by the Lebanon County Court of Common Pleas on March 16, 1999. (Exhibit B).

10. When Mr. Krause received the Divorce Decree in March, 1999, he reminded Maureen Krause that her lawyer would have to prepare the Qualified Domestic

Relations Order for submission to the Court. (Exhibit G, Para. 5).

11. No Qualified Domestic Relations Orders were ever submitted to the Court for signature by the Judge. (Joint Case Management Plan, Para. 1.22)

12. No Qualified Domestic Relations Order, signed by any Court was ever submitted to Mr. Krause's Pension Plans. (*Id.*).

13. On December 27, 1999, Mr. Krause was hospitalized at the Ohio State University Hospital, where he underwent a biopsy that revealed that he suffered from pulmonary fibrosis, and learned that he would need to have a double lung transplant. (Exhibit G, Para. 8).

14. Mr. Krause informed Maureen Krause, shortly thereafter, that he had been diagnosed with pulmonary fibrosis after tests at an Ohio hospital, and would require a double lung transplant. (Exhibit H, Plaintiff's verified response to Defendants' Interrogatory #11).

15. Mr. Krause was released from the hospital in mid-January, 2000. (Exhibit G, Para. 9).

16. Mr. Krause informed Maureen Krause that he hoped to return to work in April, 2000. (Exhibit H).

17. Mr. Krause attempted to return to work on April 1, 2000, and worked until April

8, 2000. (Exhibit G, Para. 10).

18. On April 9, or 10, 2000, Mr. Krause was hospitalized on an emergency basis at Good Samaritan hospital for shortness of breath, and Maureen Krause was notified of that hospitalization. (Exhibit G, Paras. 11&12).

19. On May 1, 2000, Mr. Krause was discharged from Good Samaritan Hospital and several hours later was rushed to Hershey Medical Center as his condition worsened. (Exhibit G, Para. 13).

20. That night, Mr. Krause was life-flighted from Hershey Medical Center to Ohio State University Hospital - Main Campus. (Exhibit G, Para. 14).

21. On May 3, 2000, Mr. Krause married Barbara Krause, at the Ohio State University Hospital. (Exhibit G, Para. 15).

22. On May 15, 2000, Mr. Krause's attorney served a Special Motion for Emergency Relief upon Attorney Hill and Plaintiff seeking to suspend Mr. Krause's alimony payments due to his hospitalization and life-threatening illness. (Exhibit I).

23. On May 26, 2000, Attorney Hill forwarded his Answer to Emergency Petition to Attorney Bowie with a cover letter that acknowledged that Maureen Krause was aware that Gerald Krause was gravely ill and needed lung transplants. The

letter further stated that Maureen Krause would probably agree to a suspension of alimony payments until Gerald was able to return to work. (Exhibit J).

24. On or about July 4 or 5, 2000, Maureen Krause, and Steven, Mr. Krause's grandson, visited him at the hospital in Ohio. (Exhibit G, Para. 17).

25. Maureen Krause had been informed that Mr. Krause was in critical condition at the time, and was on life support. (Exhibit G, Para. 16).

26. On August 6, 2000, Mr. Krause died. (Exhibit G, Para. 18).

27. During the time from Mr. Krause's illness to the time of his death, Maureen Krause did not attempt to obtain a Qualified Domestic Relations Order, nor did her attorney make any request to Mr. Krause's attorney to review any proposed Order for submission to the Court. (Joint Case Management Plan Para. 1.22).

28. From 1980 to 1984 Maureen Krause was employed as the Office Manager/Financial Manager for the Law Firm of Jones, Day, Reavis & Pogue, in Columbus, Ohio. (Exhibit K, Plaintiff's verified response to Defendants' Interrogatory #6).

29. Following Gerald Krause's death, on or about August 16, 2000, Maureen Krause, through her attorney, filed a Motion requiring the Pension Plan to freeze Mr. Krause's pension accounts. (Exhibit L).

30. On or about August 16, 2000, Attorney Hill served a copy of the August 16, 2000, Order on the Teamsters Pension Fund. (Exhibit M).

31. On September 12, 2000, the Pension Plan advised Attorney Hill that it could not comply with the Court Order, because under ERISA the Plan was prohibited from alienating benefits except in limited circumstances, including a Qualified Domestic Relations Order, and that the documents submitted by Attorney Hill to the Plan did not constitute a Qualified Domestic Relations Order. (Exhibit N).

32. On or about September 18, 2000, Attorney Hill submitted a proposed Qualified Domestic Relations Order to the Plan. (Exhibit O).

33. The proposed Order had not been submitted to a Court for signature, nor had Attorney Hill contacted Attorney Bowie before submitted the proposed Order to the Pension Plan. (*Id.*).

34. On or about September 29, 2000, the Pension Plan sent notice to Attorney Hill and Attorney Bowie that the proposed Order that Attorney Hill had submitted to the Plan could not be deemed a Qualified Domestic Relations Order because Mr. Krause was deceased, and there was no longer any benefit payable with respect to the participant that could be assigned through a Qualified Domestic Relations Order. (Exhibit P).

35. On or about October 25, 2000, Attorney Hill filed a Petition in Lebanon County Court to enforce the terms of the parties' Decree in Divorce. (Exhibit Q).

36. On or about October 27, 2000, Attorney Hill filed a Petition in Lebanon County Court to freeze the assets of the estate of Gerald Krause, and to freeze the pension benefits that Barbara Krause received or may be eligible to receive from the Pension Plan. (Exhibit R).

37. Defendants filed a timely removal to federal court on November 1, 2000, under 28 U.S.C. §1441(a) and (b) and 28 U.S.C. §1446(a), (b) and (d), which was docketed as Case No. 1:CV-00-1922.

38. Under 28 U.S.C. §1446(c)(4), the Court to which a case is removed is to examine the Notice of Removal promptly, and if it clearly appears on the face of the notice and any exhibits annexed thereto that removal should not be permitted, the court shall make an order for summary remand.

39. In this case the Court did not act under 28 U.S.C. §1446(c)(4) and automatically remand the case to state court.

40. Under 28 U.S.C. §1447(c), Plaintiff had a period of thirty (30) days after Defendants filed their Notice of Removal in which to file a Motion to Remand the case back to state court, but Plaintiff has never filed any Motion to Remand.

41. At the Joint Case Management Conference in this matter, held before the Honorable Magistrate Judge Smyser, Judge Smyser informed Plaintiff's attorney that the time in which to challenge removal of this case to federal court had long passed and that Plaintiff had, therefore, waived the ability to challenge both removal and federal court jurisdiction.

Respectfully Submitted,

**IRA H. WEINSTOCK, P.C.**
800 North Second Street
Harrisburg, PA 17102
Phone: 717-238-1657

By: _____
JEFFREY R. SCHOTT

By: _____
JASON M. WEINSTOCK

## CERTIFICATE OF SERVICE

I, Jeffrey R. Schott, Esquire, hereby certify that on the date stated below I served the attached DEFENDANTS' COUNTER-STATEMENT OF UNDISPUTED MATERIAL FACTS on the persons named below, at the stated addresses, by first class postage paid United States mail.

>Joseph M. Hill, Jr., Esquire
>124 South 8th Street
>Lebanon, PA  17042

_____
JEFFREY R. SCHOTT

Dated:  September 17, 2002